1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERNEST LINCOLN BONNER, JR.,            No. 2:17-cv-00445-KJM-DB

12                  Plaintiff,

13        v.                                ORDER

14   MEDICAL BOARD OF CALIFORNIA, et
     al.,
15
                   Defendants.
16

17

18              A physician sues the Medical Board of California and several of its members,

19   executives and employees alleging their investigation of his medical practice, revocation of his

20   medical license, and post-revocation conduct violated federal and state laws.  Apart from retired

21   defendant Lozano who moves separately for summary judgment, the defendants collectively

22   move to dismiss plaintiff's complaint.   Plaintiff opposes both motions.  Plaintiff also moves for

23   leave to file his proposed second amended complaint, which defendants oppose.  At hearing,[1] the

24   parties agreed the court should apply defendants' dismissal arguments to plaintiff's proposed

25   second amended complaint.  For the reasons explained below, the court GRANTS in part

26   _____

27   [1] Immediately before hearing began, plaintiff's counsel Allen C. Hassan advised the court of his
     recent hospitalization but stated he did not wish to postpone the hearing.  At hearing, the court
28   noted Mr. Hassan's apparent discomfort and again asked if he wished to continue the hearing to a
     later date.  Mr. Hassan declined and the hearing proceeded.

defendants' motion to dismiss and GRANTS in part Lozano's motion for summary judgment. The court also GRANTS plaintiff's motion for leave to file an amended complaint consistent with this order.

## I.    PLAINTIFF'S ALLEGATIONS

In his proposed second amended complaint, plaintiff Ernest Lincoln Bonner, Jr., M.D. ("Bonner") alleges the Medical Board of California ("Board") and 19 named individuals[2] who work for the Board are responsible for misconduct dating back to the 1980s. *See generally* Prop. Second Am. Compl. ("Prop. SAC"), ECF No. 29-2. His proposed complaint spans more than 350 paragraphs and raises 21 claims, many of which allege multiple grounds for relief.

Bonner's allegations may be grouped generally to state two overarching wrongs: the Board and its agents' (1) wrongful investigation of Bonner, culminating in the Board's 2013 decision to place him on probation in lieu of revoking his license; and (2) refusal to consider or timely reinstate Bonner's April 18, 2014 petition for penalty relief and revocation of his license. The specific factual allegations underlying each alleged wrong are summarized below.

### A.    Bonner's Allegations Regarding Medical License and the Board's Investigations

In 1976, the Board licensed Bonner to practice medicine in the State of California. *Id.* ¶ 28. Seven years later, the Board initiated its first accusation against Bonner. *Id.* ¶ 29. The Board pursued at least two other accusations against Bonner prior to initiating the investigation and accusations at issue here. *Id.* ¶¶ 30-32. Bonner is "one of only a few African American medical doctors in the state of California," *id.* ¶ 5, and the Board has "single[d] him out as a 'Bad Doctor'" because of his race, *id.* ¶¶ 116, 127, and "never engaged in other stated wrongful and illegal conduct [alleged here] against a white Licensee," *id.* ¶¶ 140, 157, 175, 186, 202, 213, 222, 234, 245, 256, 337, 347.

_____

[2] Bonner also names 100 Doe defendants. If defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

As relevant here, the Board began an investigation of Bonner's practice in 2006. *Id.* ¶ 33. In March 2007, Board investigator Cathy L. Lozano and Board physician consultant Peter Tom, M.D., interviewed Bonner and subsequently issued reports that "contained many fabrications and misrepresentations about the interview." *Id.* Both reports were sent to Board physician expert witness Khosrow Afsari, M.D., who submitted an August 24, 2008 report repeating Lozano's and Tom's fabrications and misrepresentations and adding new fabrications and misrepresentations. *Id.* ¶¶ 33-36. Based on all three reports, the Board filed a November 2009 accusation against Bonner. *Id.* ¶ 37. In 2010, eighty days before the administrative hearing on the Board's accusation, Bonner received copies of all three reports. *Id.* ¶ 38.

In late 2011, Bonner wrote a letter to the Board objecting to Lozano's continued participation in the Board's investigation. *Id.* ¶ 39. He then filed a formal complaint against Lozano and Tom and requested the Board investigate their misconduct. *Id.* ¶¶ 40-41. Although the Board informed Bonner it would investigate, Bonner was never provided with the results of any investigation, despite his requests and the reports' relevancy to the Board's accusation. *Id.* ¶ 44. In December 2011, Bonner attended an interview with Lozano and Tom. *Id.* ¶ 43.

Months later, another Board expert, Smita Chandra, M.D., authored two fraudulent reports regarding Bonner's practice. *Id.* ¶ 281. Based on the reports of Lozano, Tom, Afsari and Chandra, the Board filed a September 5, 2012 first amended accusation against Bonner. *Id.* ¶ 45. On December 6, 2012, to prepare his defense, Bonner asked to review his "central file,"[3] as permitted in California Business & Professions Code § 800(c),[4] but the Board's enforcement

---

[3] Under California Business & Professions Code § 800(a), the Medical Board must "create and maintain a central file of the names of all persons who hold a license . . . . to provide an individual historical record for each licensee" with information including certain criminal convictions, judgments or settlements of more than $3,000 for claims of negligence, error, omission or unauthorized professional services; certain public complaints; certain disciplinary information; and certain explanatory or exculpatory information submitted by the licensee. Cal. Bus. & Prof. Code ¶ 800(a)(1)-(5).

[4] Although "[t]he contents of any central file that are not public records . . . shall be confidential[,] . . . the licensee involved . . . shall have the right to inspect and have copies made of his or her complete file except for the provision that may disclose the identity of an information source." Cal. Bus. & Prof. Code ¶ 800(c)(1).

manager Paulette Romero denied the request. *Id.* ¶ 50. The next day, Bonner sent a letter confirming his phone call with Romero. *Id.* ¶ 51. Later that month, Bonner sent two written requests to review his central file, but "to this date [he] has not been allowed to do so." *Id.* ¶¶ 52, 55.

### B.    The Board's 2013 Decision

In early 2013, an administrative law judge heard the Board's first amended accusation against Bonner. *Id.* ¶ 57. The hearing followed the same judge's denial of Bonner's request for a continuance and exclusion of Bonner's expert witnesses, which Bonner unsuccessfully challenged in a petition for writ of administrative mandamus. *Id.* ¶¶ 46-49, 53-54, 56; *see* Defs.' Request for Judicial Notice, ECF Nos. 11 (request), 11-1 (exhibits), ("Defs.' RJN"), Ex. A, (Bonner's Dec. 31, 2012 petition); Defs.' RJN, Ex. B (Bonner's May 22, 2013 request for dismissal of petition).[5] At the hearing, Chandra "admitted under oath during cross examination that she had submitted two false reports to the Board" in 2012, testifying "she had not reviewed all of the documents sent to her by the Board although her written reports . . . stated she had . . . ." Prop. SAC ¶¶ 57-58. Despite their flaws, the administrative law judge admitted Afsari's and Chandra's reports. *Id.* ¶ 57. On March 19, 2013, the Board adopted the administrative law judge's decision against Bonner in full ("the 2013 Decision"). *Id.* ¶ 58; *see* Defs.' RJN, Ex. C (Board's 2013 Decision and order). The Board revoked Bonner's medical license, but stayed the revocation and placed Bonner on probation instead. Prop. SAC ¶ 58.

Bonner challenged the Board's 2013 Decision in a petition for writ of administrative mandamus, but his petition was denied at each level of the California court system,

---

[5] Defendants request the court judicially notice twelve documents, all of which are matters of public record and are incorporated by reference in Bonner's complaint. Defs.' RJN Exs. A-L. The court GRANTS the unopposed request as to each document cited in this order. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," though it may not judicially notice facts "subject to reasonable dispute") (citations omitted); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (noting the incorporation by reference doctrine permits the court to "consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them") (citations omitted).

culminating in the California Supreme Court's July 23, 2014 denial. *Id.* ¶ 59;[6] Defs.' RJN Ex. D

(petition), Exs. E-F (California trial court denial of petition and judgment), Ex. G (California

Court of Appeal denial), Ex. H (California Supreme Court denial).

C.    Bonner's Petition for Penalty Relief and the Board's Revocation of his License

On April 18, 2014, after a year on probation, Bonner petitioned the Board for

penalty relief under Business and Professions Code § 2307, requesting additional time to pay for

courses required under his terms of probation.[7] Prop. SAC ¶ 61; Defs.' RJN Ex. I at 21-27

(petition). Instead of considering Bonner's petition, on June 9, 2014, the Board petitioned an

administrative law judge to revoke Bonner's probation and medical license for failing to comply

with his probation terms. Prop. SAC ¶ 62. On October 8, 2014, after a contested administrative

hearing, the Board's Executive Director Kimberly Kirchmeyer and the Board members adopted in

full an administrative law judge's recommendation to revoke Bonner's license. *Id.* ¶¶ 63-64. The

Board's Discipline Coordination Unit then notified Bonner it was withdrawing his petition for

penalty relief, explaining Bonner was "no longer eligible" under § 2307. *Id.* ¶ 65; Defs.' RJN

Ex. I at 20 (Oct. 14, 2014 letter signed by Cyndie Kouza). The Board official revoked Bonner's

license on December 4, 2014. Prop. SAC ¶ 67. The Board then notified the National Practitioner

Data Bank and Medi-Cal that Bonner's license was revoked and posted notice of the revocation

on the internet. *Id.* ¶¶ 68-69. Medi-Cal subsequently notified Bonner that he was indefinitely

prohibited from receiving Medi-Cal payments and his name would be posted on the Medi-Cal

Suspended and Ineligible Provider List. *Id.* ¶ 69.

On January 5, 2015, Bonner filed a petition for writ of administrative mandamus

and on February 18, 2015 filed an application to stay the decision revoking his license. *Id.* ¶ 70;

---

[6] Although Bonner refers to Case No. CPF-13-512980 as "an application . . . for a stay" filed on June 26, 2013, defendants' Exhibit D indicates Case No. CPF-13-512980 was a petition for writ of administrative mandamus challenging the Medical Board's 2013 Decision, filed May 17, 2013, which included a stay request. Bonner does not object to or otherwise dispute the exhibit.

[7] California Business and Professions Code § 2307 permits a physician placed on probation to petition "for reinstatement or modification of penalty, including modification or termination of probation" no earlier than one year from the effective date of the Board's decision. *See* Cal. Bus. & Prof. Code § 2307(a), (b)(1)(3).

Defs.' RJN Ex. I (petition and exhibits). The state court issued a stay on February 27, 2015, finding the Board was unlikely to prevail on the merits because although "the Board was not required to grant Bonner's petition for penalty relief, the court finds nothing in [California Business and Professions Code] section 2307 that allows it to simply ignore an otherwise properly filed petition in this manner." Prop. SAC ¶ 71; ECF No. 29-3 at 6 (state court min. order). The Board then reinstated Bonner's license, but not his petition for penalty relief. Prop. SAC ¶ 72. The Board also posted the stay order on the internet and notified the National Practitioner Databank that Bonner's license was reinstated. *Id.* The Board provided no such notification to Medi-Cal. *Id.*

Roughly seven months later, the state court tentatively granted Bonner's petition. *Id.* ¶ 73; *see* Defs.' RJN Ex. J at 2-13 (state court's tentative ruling). The state court finalized its tentative ruling in a September 25, 2015 minute order, remanding the matter to the Board to consider Bonner's petition for penalty relief. Prop. SAC ¶ 73. The Board ignored the order. *Id.* On January 19, 2016, the court refiled the same order. *Id.*; *see* Defs.' RJN Ex. J at 1 (Jan. 19, 2016 order adopting tentative ruling partially granting petition).[8] The Board then remanded Bonner's petition for penalty relief to an administrative law judge, Defs.' RJN Ex. K at16 (Feb. 5, 2016 remand order), and issued a notice of hearing on the petition, Ex. K-17 (Jan. 22, 2016 notice). At a March 2016 administrative hearing on Bonner's petition for penalty relief, Bonner's counsel withdrew the petition as moot because Bonner had satisfied the conditions of probation. Defs.' RJN Ex. L (March 23, 2016 hearing transcript); Defs.' RJN Ex. K at 1-2 (Board's April 7, 2016 return to partial writ). To date, despite Bonner's multiple requests, the Board has not notified Medi-Cal that Bonner's license was reinstated, nor has it requested Medi-Cal restore Bonner's status as a Medi-Cal provider. *Id.* ¶ 74.

////

---

[8] The January 19, 2016 state court order refers to that court's tentative ruling, which it attaches as Exhibit A, but makes no mention of an earlier September 25, 2015 minute order adopting the tentative ruling. *See* Ex. J at 1. At this juncture, the court accepts as true Bonner's allegation the state court adopted its tentative ruling through a September 25, 2015 minute order. *See* Prop. SAC ¶ 73.

1   　　　D.　　Bonner's Proposed Second Amended Complaint

2   　　　　　In addition to naming the Board, Bonner's proposed second amended complaint

3   names 19 individual defendants, grouped as follows:

4   　　　- Eleven Board Members Dev GnanaDev, M.D. (erroneously sued as Dev Cnanadev,

5   　　　M.D.), Denise Pines, Michael Bishop, M.D., Randy W. Hawkins, M.D., Howard R.

6   　　　Krauss, M.D., Sharon Levine, M.D. (erroneously sued as Sheron Levine, M.D.), Ronald

7   　　　H. Lewis, M.D., Gerrie Schipske, R.N.P., J.D., Jamie Wright, Barbara Yaroslavsky, and

8   　　　Felix C. Yip, M.D., collectively referred to here as "Medical Board Members";

9   　　　- Board Executive Director Kimberly Kirchmeyer;

10  　　　- Board investigator Cathy L. Lozano (retired);

11  　　　- Board physician consultant Peter Tom, M.D.;

12  　　　- Board expert witnesses Khosrow Afsari, M.D. and Smita Chandra, M.D.

13  　　　- Board employees Paulette Romero and Cyndie Kouza, both of whom Bonner names for

14  　　　the first time in his proposed second amended complaint;

15  Although Bonner also identifies David Serrano Sewell as a defendant Board member, *see* Prop.

16  SAC ¶ 9, Bonner omits Sewell from the complaint caption and the docket suggests Sewell has not

17  been served. *See* ECF No. 4 (March 31, 2017 summons returned executed, indicating Bonner

18  served all defendants other than Sewell, Romero and Kouza).

19  　　　　　Claims 1 to 6 and 11 are brought under 42 U.S.C. §§ 1981, 1983 and 1985 and

20  allege *inter alia*, retaliation, racial discrimination, conspiracy, wrongful use of a civil proceeding,

21  deliberate indifference, violations of the California and United States Constitutional rights to

22  freedom of speech, petition, due process and equal protection. Claim 7 improperly alleges a

23  direct Fourteenth Amendment violation. Claims 8 to 10 and 12 to 19 allege various state law

24  violations. Claims 20 to 21 allege Sherman Act and Clayton Act violations.

25  　　　　　With the exception of defendant Lozano, the defendants collectively move to

26  dismiss Bonner's first amended complaint. Defendants' Motion to Dismiss ("Defs.' Mot."), ECF

27  No. 10. Lozano separately moves for summary judgment. Lozano Mot., ECF No. 15. Bonner

28  opposes both motions. Opp'n, ECF No. 18. Bonner also moves to amend his first amended

complalnt, which defendants oppose.  Mot. to Amend ("Amend. Mot."), ECF No. 29; Amend. Opp'n, ECF No. 31.  The court submitted the motions after hearing and resolves them here.

## II.    DEFENDANTS' MOTION TO DISMISS

### A.    Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although "detailed factual allegations" are not required at the pleading stage, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the complaint must contain more than conclusory or formulaic recitations of elements, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The complaint must contain "sufficient factual matter" to make the alleged claim at least plausible. *Iqbal*, 556 U.S. at 678; *see Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.")  Aside from external facts properly subject to judicial notice, the court restricts its analysis to the face of the complaint, construing the complaint in plaintiff's favor and accepting well-pled factual allegations as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

Under Rule 15 "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation and internal quotation marks omitted).  Before granting leave to amend, a court considers any undue delay, bad faith, dilatory motive, futility or undue prejudice posed by allowing the amendment.  *Id.* at 1051-52 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Potential undue prejudice to the opposing party "carries the greatest weight," *id.* at 1052, and "[t]he party opposing amendment bears the burden of showing prejudice," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  Absent prejudice, there is a strong presumption in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

////

B.      Discussion

1.      Claims Against Defendant Medical Board

Defendants contend the Eleventh Amendment bars each of Bonner's claims against the Board. Defs.' Mot. at 24-27.[9]  Defendants are correct.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Under the Eleventh Amendment, "absent waiver or valid [congressional] abrogation, federal courts may not entertain a private person's suit against a State." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011).  Absent consent, the Eleventh Amendment bars suits against state agencies and departments, regardless of the nature of relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies.") (citation omitted).  For Eleventh Amendment purposes, the Medical Board is a state agency. *Forster v. Cty. of Santa Barbara*, 896 F.2d 1146, 1149 (9th Cir. 1990) (citing *Board of Medical Quality Assurance v. Hazel Hawkins Memorial Hospital*, 135 Cal. App. 3d 561 n.1 (1982); Cal. Bus. & Prof. Code § 2001); *see also Mir v. Med. Bd. of California*, No. 12CV2340-GPC-DHB, 2013 WL 1932935, at *5 (S.D. Cal. May 8, 2013) (finding plaintiff's request for reinstatement of his medical license was barred because "the Medical Board of California, a state agency, . . . is cloaked by Eleventh Amendment immunity").

Neither waiver nor abrogation save Bonner's claims against the Medical Board. Bonner raises federal claims against the Medical Board in his eleventh, twentieth and twenty-first claims alleging violations of 42 U.S.C. § 1985; the Sherman Act, 15 U.S.C. §§ 1, 2; and Clayton Act, 15 U.S.C. § 15, respectively.  Prop. SAC ¶¶ 227-37, 325-51.  State entities are not "persons"

---

[9] Citations to the parties' briefs refer to ECF page numbers, not the briefs' internal pagination. Citations to defendants' exhibits, however, refer to the exhibit numbering assigned by defendants.

within the meaning of 42 U.S.C. §§ 1981, 1983 and 1985.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).  Further, Congress did not abrogate state sovereign immunity in enacting the Sherman Act or the Clayton Act.  *See Hines v. California Pub. Utilities Comm'n*, No. C-10-2813 EMC, 2010 WL 4691652, at *3 (N.D. Cal. Nov. 8, 2010).  Bonner's state law claims against the Medical Board, including his eighth, ninth, tenth, fourteenth and fifteenth claims alleging state common law causes of action and his twelfth and thirteenth claims alleging violation of California Business & Professions Code § 17200, *et seq.*, and the California Unruh Civil Rights Act, fare no better.  *See* Prop. SAC ¶¶ 193-226, 238-79.  Congress did not abrogate state sovereign immunity by authorizing federal courts' supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.  *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541 (2002); *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006).  And a state's consent to suit in its own courts does not constitute consent to suit in federal courts.  *Stanley*, 433 F.3d at 1134 (holding California did not consent to suit in federal court when it enacted the Unruh Civil Rights Act) (citing *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).  Finally, "[g]overnmental entities . . . are not subject to suit under the unfair competition law" in California courts.  *See Leider v. Lewis*, 2 Cal. 5th 1121, 1132 n.9 (2017).

Accordingly, defendants' motion to dismiss all claims against the Medical Board is GRANTED.  In light of the Eleventh Amendment's conclusive bar, dismissal is without leave to amend.

### 2. Fourteenth Amendment Claim

Bonner's seventh claim alleges "[v]iolation of the Fourteenth Amendment against all Defendants in their individual capacities."  Prop. SAC ¶¶ 182-92.  Because "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983," *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (citations omitted), Bonner's direct Fourteenth Amendment claim is DISMISSED as defective as to all defendants, without leave to amend.

10

3. <u>Statute of Limitations</u>

Defendants argue Bonner's claims under 42 U.S.C. §§ 1981, 1983 and 1985 arising from the Board's March 19, 2013 Decision are time-barred. Defs.' Mot. at 40-41. The court agrees.

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citation omitted). Because 42 U.S.C. § 1983 does not contain a statute of limitations, courts apply the forum state's statute of limitations for personal injury actions and the forum state's tolling provisions, except where the forum state's law is inconsistent with federal law. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citation omitted). In California, the relevant limitations period for all claims under Title 42 is two years. Cal. Civ. Proc. Code § 335.1; *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711-12 (9th Cir. 1993). The limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). Generally, "a statute of limitations period is triggered by the decision constituting the discriminatory act and not by the consequences of that act." *McCoy v. San Francisco*, 14 F.3d 28, 30 (9th Cir. 1994) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58 (1980)). But that decision must be sufficiently "final" to trigger the statute of limitations. *Id.* (citing *Norco Const., Inc. v. King County*, 801 F.2d 1143, 1145-46 (9th Cir. 1986) (holding statute of limitations commenced only upon the agency's final decision). *Cf. RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1059 (9th Cir. 2002) (in determining when an act occurs for statute of limitations purposes, "the question is when the operative decision was made, not when the decision is carried out.").

Bonner's claim accrued when the Board adopted its March 19, 2013 Decision. By then, Bonner had received the allegedly fraudulent 2008 reports of defendants Lozano, Tom and Asfari in 2010, *see* Prop. SAC ¶ 38; filed a formal complaint with the Board regarding defendants

11

Lozano and Tom in December 2011, *id.* ¶ 41; received Asfari's allegedly fraudulent May 25, 2010 second report in October 2012, *id.*; knew the Board raised issues not contained in the First Amended Accusation at the January 7, 2013 through February 12, 2013 administrative hearing; *see id.* ¶ 57; was barred from calling his expert witnesses at that same administrative hearing, *id.*; and knew Chandra "admitted under oath during cross examination [at the administrative hearing] that she had submitted two false reports to the Board against plaintiff," *id.* It is thus apparent from the face of Bonner's complaint that his claims arising from the Board's 2013 Decision and key acts preceding it accrued no later than March 19, 2013 when the Board issued its Decision. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 927 (9th Cir. 2004) (holding plaintiff's claim accrued when she received a letter notifying her of the Idaho State Board of Medicine's proposal to deny her license reinstatement); *Mir v. Deck*, No. SACV 12-1629-RGK SH, 2013 WL 4857673, at *9 (C.D. Cal. Sept. 11, 2013), *aff'd*, 676 F. App'x 707 (9th Cir. 2017) (finding plaintiff-physician's civil rights claims against Board investigator and expert witnesses for misconduct resulting in the Board's decision to revoke plaintiff's medical license accrued "when the Medical Board issued its decision revoking his license").

Bonner filed the instant action on February 27, 2017, nearly four years after his claim accrued. Accordingly, absent tolling, Bonner's §§ 1981, 1983 and 1985 claims arising from the Board's 2013 decision and actions preceding the 2013 Decision are untimely. "Under California law, equitable tolling 'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Butler*, 766 F.3d at 1204 (citation omitted). Equitable tolling requires (1) defendants' timely notice of the claim, (2) defendants' lack of prejudice in gathering evidence to defend against the claim, and (3) plaintiff's good faith and reasonable conduct in filing the claim. *Guevara v. Ventura Cty. Cmty. Coll. Dist.*, 169 Cal. App. 4th 167, 173 (2008) (citation omitted).

Because he petitioned for administrative mandamus relief on May 17, 2013, within two months of the Board's decision, the court assumes without deciding that Bonner's claims were equitably tolled while his petition was pending. *See, e.g.*, *id.*; *Azer v. Connell*, 306 F.3d 930,

12

937 (9th Cir. 2002).  But his civil rights claims still remain untimely.  At most, Bonner's petition equitably tolled his claims until July 23, 2014, when the California Supreme Court denied his petition.  *See* Defs.' Ex. H (California Supreme Court denial in CPF-13-512980).  Bonner then waited until February 27, 2017, more than 31 months later and seven months after the statute of limitations had run, to file this suit.  Bonner has not shown diligence and therefore cannot save his claim through equitable tolling.  *See Guevara*, 169 Cal. App. 4th 167, 173 (2008) (good faith and reasonable conduct required for entitlement to equitable tolling).

Bonner argues, albeit briefly and without citation to authority, that his claims are timely because the Board's wrongdoing is "ongoing" and "the statute of limitation [*sic*] will not begin to run until the continuing wrong ceases."  *See* Opp'n at 5-6.  At hearing, Bonner's counsel elaborated, arguing the Board's practice of discriminatory prosecution dating back to the 1980s has ruined Bonner's practice and reputation.  Accordingly, Bonner views the Board's actions, from their first investigation of Bonner in the 1980s through their current alleged refusal to restore him to his rightful reputation and status, as a single continuing violation symptomatic of a discriminatory system.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Pouncil v. Tilton*, 704 F.3d 568, 578–79 (9th Cir. 2012), though the untimely acts may be considered "as evidence of an unconstitutional motive, *RK Ventures, Inc.*, 307 F.3d at 1062.  Here, the Board's 2013 decision and later alleged mishandling of Bonner's petition for penalty relief are analytically "discrete" wrongs that separately accrued and are separately actionable.  Bonner's complaint makes as much clear, as he separately challenged each decision as a concrete wrong in separate petitions for writ of administrative mandamus.  Moreover, in addressing Bonner's challenge to the Board's handling of his petition for penalty relief, the state court expressly recognized that Bonner's grievance was distinct from his complaints about the Board's 2013 decision, explaining Bonner's challenge to the 2013 Decision was "final and [] not at issue here."  *See* Defs.' RJN Ex. J at 3.  That the state court ultimately granted Bonner's petition without disturbing the 2013 Decision confirms that the Board's refusal

13

to consider Bonner's petition for penalty relief and challenging revocation of his license are

distinct wrongs that independently accrued.  This forecloses Bonner amorphous continuous

wrong theory.  *See Morgan*, 536 U.S. at 112 ("discrete acts that fall within the statutory time

period do not make timely acts that fall outside the time period").

Defendants' motion to dismiss Bonner's §§ 1981, 1983 and 1985 claims insofar as

those claims arise from the Board's 2013 Decision and actions leading up to that decision is

GRANTED without leave to amend.

4.     California Government Claims Act Presentment

Defendants move to dismiss each of Bonner's state law claims for damages,

arguing Bonner's Government Claims Form, submitted July 14, 2016, is untimely and does not

comply with the California Government Claims Act presentment requirement.  Amend. Opp'n at

12-13; *see* Prop. SAC ¶¶ 75-77 (alleging submission of claim form and state's rejection); Claim

Form, ECF No. 29-3 (claim form stamped "received" July 14, 2016).

Before filing a state law claim for damages against a public entity or its

employees, the California Government Claims Act requires the timely presentation of a written

claim to the California Victim Compensation and Government Claims Board.  Cal. Gov't Code

§ 910.  The claim form must include "the date, place, and other circumstances of the occurrence

or transaction which gave rise to the claim asserted," *id.* § 910(c), and must be filed no later than

one year after the claim accrues, *id.* § 911.2(a).  Because "[t]he purpose of these statutes is 'to

provide the public entity sufficient information to enable it to adequately investigate claims and to

settle them, if appropriate, without the expense of litigation,'" a claim form need not specify

every act or omission that allegedly caused the injury.  *Stockett v. Ass'n of California Water*

*Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004) (citation omitted).  Nonetheless, a

claim form may not be "based on an 'entirely different set of facts.'"  *Id.* at 447 (citation and

internal quotation marks omitted).

In his July 14, 2016 claim form, Bonner identifies the "date of the incident" giving

rise to his claim as "December 4, 2014 through January 18, 2016."  *See* Claim Form at 2.  He

explains he seeks $25 million for "Loss of income, investment opportunity, loss of employment,

business opportunity, marital relationship." *Id.* He also states his claim is against the "Medical Board of California," without listing any individual defendant. *Id.*; *see* Cal. Gov't Code § 910(e) (requiring claimant to include "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known"). When prompted to "[e]xplain the circumstances that led to the damage or injury," Bonner writes only "Wrongful Revocation of Medical License, # A30477." Claim Form at 3. When asked "why [he] believe[s] the state is responsible for the damage or injury," Bonner wrote, "The California Medical Board, [*sic*] wrongfully revoked my medical license." *Id.* Bonner also attached to the claim form the state court's February 27, 2015 minute order staying the Board's revocation of Bonner's license and briefly describing his probation requirements and petition for penalty relief. *Id.* at 5-6.[10]

Because Bonner's claim form notified the government of acts arising only from "December 4, 2014 through January 18, 2016," his state law claims seeking damages and arising from the Board's 2013 Decision are barred here. December 4, 2014 is the date Bonner alleges his license was revoked following the Board's refusal to consider his petition for penalty relief. *See* Prop. SAC ¶ 67. The 2013 Decision and acts leading up to that decision are based on an "entirely different set of facts" than those Bonner provided in his claim form. *See Stockett*, 34 Cal. 4th at 447 (noting courts typically bar suits in which there is a "complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim") (citation and internal quotation marks omitted). Neither the claim form nor the attached minute order provide a single substantive reference to the Board's allegedly fraudulent investigations, its accusations, its refusal to allow Bonner to review his central file or the otherwise allegedly unlawful process that led to the 2013 decision. *See* Claim Form. Bonner therefore cannot seek damages for those claims here. *See Mackovski v. City of Garden Grove*, 666 F. App'x 649, 654 (9th Cir. 2016) (affirming dismissal

---

[10] Bonner does not expressly state he attached this minute order to his claim form, but he filed the claim form and the minute order in this court as a single document. *See* ECF No. 29-3. Further, on the form, Bonner checked a box indicating he had "[a]ttach[ed] copies of any documentation that supports [his] claim." *Id.* at 2. The court assumes for purposes of the present motion that the minute order was attached to Bonner's claim form.

of plaintiff's claims for damages where "the date on the required claim forms, and the theories of liability set forth therein, varied materially from that which was alleged in their civil complaints"); *Derby v. City of Pittsburg*, No. 16-CV-05469-SI, 2017 WL 713322, at *9–10 (N.D. Cal. Feb. 23, 2017) (dismissing plaintiff's fraud and negligent misrepresentation claims without leave to amend because neither the claim form nor attached documents "mention or discuss the allegedly fraudulent or negligent misrepresentations that plaintiff alleges . . . ."); *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 377 (2014) (holding substantial compliance exception could not save plaintiff's claim where her claim forms included "no reference whatsoever" to the defendant's allegedly tortious acts and did not indicate damages sought for those acts). Additionally, and alternatively, the form was untimely as to the Board's 2013 Decision because Bonner filed his claim form on July 13, 2016, well outside the one-year limitations period. *See* Cal. Gov't Code § 911.2(a).

Although it need not reach the merits of defendants' other arguments, the court notes that several of Bonner's state law claims as to the 2013 Decision are likely barred by the relevant statutes of limitations. *See* Cal. Code Civ. Proc. § 340(c) (one-year statute of limitations for false light claims); *id.* § 335.1 (two-year statute of limitations for negligence and intentional infliction of emotional distress claims); *id.* § 339 (two-year statute of limitations for intentional and negligent interference claims); *id.* § 338 (three-year statute of limitations for fraud and Unruh Act claims);

Accordingly, defendants' motion to dismiss Bonner's state law claims for damages is GRANTED without leave to amend insofar as those claims pertain to the 2013 Decision and defendants' related activity preceding that decision.

5. <u>Federal Rule of Civil Procedure 8</u>

In addition to the deficiencies discussed above, portions of Bonner's proposed second amended complaint violate Rule 8, which requires a party to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."). The same was true of Bonner's first amended complaint. *See* ECF No. 7. Neither verbosity nor length, standing

alone, justify dismissal of a complaint under Rule 8. *Hearn v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131 (9th Cir. 2008). But dismissal is appropriate for "[p]rolix, confusing complaints . . . [that] impose unfair burdens on litigants and judges," including complaints that require the court and opposing counsel to "prepare outlines to determine who is being sued for what." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Moreover, vague and conclusory allegations that lump defendants together do not state a claim upon which relief may be granted. *Holcomb v. California Bd. of Psychology*, No. 215-CV-02154-KJM-CKD, 2016 WL 3126127, at *4 (E.D. Cal. June 3, 2016), *appeal dismissed* (Aug. 18, 2016); *see J.M. v. Pleasant Ridge Union Sch. Dist.*, No. CV21600897WBSCKD, 2017 WL 117965, at *2 (E.D. Cal. Jan. 10, 2017) ("Failure to delineate conduct by a specific defendant prevents the court from drawing the reasonable inference that the specific defendant is liable for the claim alleged and justifies dismissal of the claim.").

       Bonner's proposed second amended complaint alleges only the following as to proposed new defendant Romero: on December 6, 2012, Romero informed Bonner he could not inspect his central file and Bonner confirmed this conversation in a letter the next day. Prop. SAC ¶¶ 50-51. Bonner nonetheless names Romero as a defendant in 17 claims. As to proposed defendant Kouza, Bonner alleges only that she signed an October 14, 2014 letter advising Bonner that the Board was withdrawing his petition for penalty relief. *Id.* ¶ 65. From that single allegation, he names Kouza in 13 claims. Similarly, Bonner names Afsari, Chandra and Tom in claims concerning the Board's alleged mishandling of his petition for penalty relief, but his proposed complaint does not raise a single allegation implicating those defendants in the Board's alleged misconduct in handling of his petition. *See, e.g.*, *id.* ¶¶ 316-24 (false light invasion of privacy claim). Finally, several of Bonner's claims overlap without explanation, making it difficult to discern each claim's substance. For example: his first claim alleges several defendants violated 42 U.S.C. § 1981 and 42 U.S.C. § 1983 on grounds of "Racial Discrimination ,[*sic*] Violation of Freedom of Speech, Violation of Due Process ,[*sic*] and Violation of Equal Protection under Article 1 of the California Constitution and under the First, Fourth and Fourteenth Amendment of the U.S. Constitution." *Id.* at 28. He then alleges in his second claim

that many of those same defendants violated § 1981, alleging "Racial Discrimination , [*sic*] Violation of Free Speech, Right to Patition [*sic*], Due Process, and Violation of Equal Protection under Article 1 of the California Constitution and under the First, Fourth, and Fourteenth Amendment of the U.S. Constitution." *Id.* at 32. And with his third claim, he alleges that many of those same defendants violated § 1983, alleging "Violation of Free Speech, Right to Patition [*sic*], Due Process, and Violation of Equal Protection under Article 1 of the California Constitution and under the First, Fourth, and Fourteenth Amendment of the U.S. Constitution." *Id.* at 37. These claims involve similar, overlapping factual allegations and it is unnecessarily difficult to discern the basis for each claim, much less distinguish between them.

In any third amended complaint, as allowed by this order, Bonner should consider whether he intends to name each defendant in each claim and whether he alleges sufficient factual detail to support his claims as to each defendant. Further, to provide both the court and defendants with fair notice of his claims, Bonner should consider organizing his claims based on the relevant transaction or occurrence that gives rise to each claim. Failure to comply with Rule 8 may be grounds alone for dismissal. *See McHenry*, 84 F.3d at 1179.

III.     LOZANO'S MOTION FOR SUMMARY JUDGMENT

Defendant Cathy L. Lozano is a former Board investigator. Prop. SAC ¶ 8. Throughout the 2007 to 2012 period, Lozano interviewed Bonner and prepared investigative reports that the Board relied on in filing its accusations. *Id.* ¶¶ 33, 38, 43, 45, 58. In her reports, Lozano allegedly included material fabrications and misrepresentations about Bonner to provide the Board with a basis for revoking Bonner's license, and she instructed defendants Tom, Afsari and Chandra to do the same in their reports. *Id.* ¶¶ 123, 271-72, 285, 297. Citing her December 31, 2011 retirement and Bonner's knowledge of her alleged misconduct, Lozano moves for summary judgment on all claims against her.

A.     Legal Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

18

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts"). Also, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587-88. "Where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant], there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

B.    DISCUSSION

Lozano presents the following undisputed facts: (1) Lozano retired from the Board on December 31, 2011; (2) Lozano has not worked for the Board since retiring; and (3) on or about December 5 or 7, 2011, Bonner submitted a complaint to the Board concerning Lozano's alleged misconduct and requesting dismissal of the then-pending accusation against him. Statement of Undisputed Facts (SUF), ECF No. 15-1 ¶¶ 1-3. Lozano provides a sworn declaration attesting to the first two facts, Lozano Decl., ECF No. 15-2 ¶ 3, and requests judicial notice of Bonner's December 2011 letters in support of the third fact, Lozano RJN, ECF No. 16,

1     Ex. A-29 – A-35.[11]  Bonner does not respond to Lozano's separate statement of undisputed facts

2     or introduce evidence to rebut her arguments.  *See* Opp'n.

3           In light of this unrebutted chronology of events, Lozano is entitled to summary

4     judgment on all claims except Bonner's antitrust claims.  As explained above, Bonner's 42 U.S.C.

5     §§ 1981, 1983 and 1985 claims arising from the Medical Board's 2013 Decision and acts

6     preceding that decision are time-barred.  Further, Bonner's state law claims for damages are

7     barred under California's Government Claims Act.  The only claims that remain live, then, are

8     Bonner's state law claims seeking injunctive or declaratory relief pertaining to the Board's 2013

9     Decision; claims arising from the Board and its agents' refusal to hear Bonner's April 18, 2014

10     petition for penalty relief and challenge to revocation of his license, as well as refusal to timely

11     reinstate his petition; and his antitrust claims.

12           Because Lozano has not worked for the Board since December 31, 2011, there is

13     no basis for Bonner's request to enjoin her from future misconduct or compel her to act in her

14     official capacity.  Accordingly, Bonner's state and federal law claims seeking injunctive or

15     declaratory relief are moot as to Lozano.  *See, e.g.*, Prop. SAC ¶ 263 (Unruh Act claim seeking

16     injunctive relief to bar defendants "from targeting [Bonner] or other medical professionals of

17     color that challenge any false accusation filed . . . . against Doctors of Color"); *see also McNally*

18     *v. Univ. of Hawaii*, 780 F. Supp. 2d 1037, 1057 (D. Haw. 2011) (granting summary judgment on

19     official capacity claims seeking prospective injunctive relief in favor of retired defendant

20     "because [she] is no longer employed [by the defendant]").  Further, although Bonner filed his

21     proposed second amended complaint after Lozano filed her motion for summary judgment and

22     was therefore aware of her arguments, he does not even allege a single fact concerning Lozano's

23     conduct after her December 2011 retirement or otherwise implicating her in the alleged

24     mishandling of his petition for penalty relief.  *See, e.g.*, Prop. SAC ¶¶ 270-71 (alleging Lozano

---

25     [11] Lozano requests the court judicially notice the same exhibits for which defendants requested

26     judicial notice, with two additions: Lozano requests judicial notice of two documents filed as attachments to Bonner's December 31, 2013 petition for writ of administrative mandamus

27     challenging the administrative law judge's denial of Bonner's request for a continuance.  *See* Lozano RJN Ex. A.  The court's reasoning for granting the defendants' requests for judicial

28     notice above applies with equal force here.  The court GRANTS Lozano's unopposed request.

engaged in fraudulent activity "[o]n or about 2007 through 2012"); *id.* ¶ 61 (alleging Bonner filed his petition for penalty relief on April 18, 2014). Thus, with nothing in Bonner's operative or proposed complaint alleging Lozano's misconduct as to Bonner's petition for penalty relief, much less any evidence indicating Lozano was in any way involved in handling that petition, Lozano is entitled to summary judgment for all claims arising from that alleged misconduct. This leaves only Bonner's antitrust claims. Although Lozano contends the antitrust claims are time-barred, she does not address when those claims accrued and whether tolling may apply, and therefore has not shown she is entitled to summary judgment in this respect. Lozano may renew her argument with necessary support in response to Bonner's second amended complaint, if any.

Lozano's motion for summary judgment is GRANTED as to all claims except Bonner's antitrust claims.

IV.    <u>CONCLUSION</u>

The court ORDERS as follows:

1.    Defendants' motion to dismiss all federal and state law claims as to defendant Board is GRANTED without leave to amend;

2.    Defendants' motion to dismiss plaintiff's Fourteenth Amendment claim is GRANTED as to all defendants without leave to amend;

3.    Defendants' motion to dismiss plaintiff's §§ 1981, 1983 and 1985 claims arising from the Board's investigation and 2013 Decision is GRANTED without leave to amend;

4.    Defendants' motion to dismiss plaintiff's state law claim seeking damages for conduct arising from the 2013 Decision is GRANTED without leave to amend;

5.    Defendant Lozano's motion for summary judgment is GRANTED as to all claims other than Bonner's antitrust claims; and

6.    Bonner may file a second amended complaint consistent with the findings in this order within 21 days. Where applicable, defendants may renew any

argument not addressed in this order in response to Bonner's second amended complaint, if any.

IT IS SO ORDERED.

DATED: September 30, 2018.

_____
UNITED STATES DISTRICT JUDGE