1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ERNEST LINCOLN BONNER, JR.,          No.  2:17-cv-00445-KJM-DB

12              Plaintiff,

13        v.                                ORDER

14    MEDICAL BOARD OF CALIFORNIA, et
      al.,
15
              Defendants.
16

17              In his Second Amended Complaint, plaintiff Ernest Lincoln Bonner alleges

18    additional facts to support his claim that investigation of his medical practice, revocation of his

19    medical license and post-revocation conduct by members of the Medical Board of California

20    violated federal and state laws.  Defendants move to partially dismiss plaintiff's Second Amended

21    Complaint.  ECF No. 41.  Plaintiff filed an opposition, ECF No. 43, and defendants filed a reply,

22    ECF No. 45.  The court took the matter under submission without a hearing.  As explained below,

23    the court GRANTS the motion.

24    I.        BACKGROUND

25              A.        Factual Allegations

26                       The court's previous order analyzed plaintiff's proposed second amended

27    complaint.  See Prev. Order, ECF No. 34, at 1.  The operative Second Amended Complaint

28    largely repeats the factual allegations plaintiff included in his proposed second amended

complant against the Medical Board of California ("Board") and several of its members, executives, and employees. *See* Prop. Second Am. Compl. ("Prop. SAC"), ECF No. 29-2; Second Am. Compl. ("SAC"), ECF No. 35. Therefore, the court only briefly summarizes the allegations here.

Plaintiff is a physician. SAC ¶ 6. In his Second Amended Complaint, plaintiff, who is African–American, alleges a pattern of misconduct and racial discrimination by the Board and nineteen named individuals[1] who work for the Board dating back to the 1980s. *See generally* SAC. Plaintiff's allegations generally focus on two wrongs: the Board and its agents' (1) wrongful investigation of plaintiff, culminating in the Board's 2013 decision to place him on probation in lieu of revoking his license, and (2) refusal to consider or timely reinstate his April 18, 2014 petition for penalty relief and revocation of his license. *See* Prev. Order at 2–6.

B.    Procedural History

The court's previous order dismissed portions of plaintiff's first amended complaint without leave to amend and granted plaintiff leave to file an amended complaint consistent with the court's findings.[2] *Id.* at 21. First, the court dismissed all of plaintiff's claims against the Board and his Fourteenth Amendment claim without leave to amend. *Id.* Second, the court dismissed plaintiff's 42 U.S.C. §§ 1981, 1983 and 1985 claims, as well his state law claims for damages, arising from the Board's investigation and 2013 decision without leave to amend. *Id.* Finally, the court granted summary judgment as requested by defendant Cathy Lozano, a former Board employee, as to all claims other than plaintiff's antitrust claims. *Id.*

---

[1] Plaintiff also names 100 Doe defendants. As the court stated in its previous order, if defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within ninety days of the complaint. Fed. R. Civ. P. 4(m).

[2] In its previous order, the court at one point stated any subsequent complaint would be plaintiff's third amended complaint. *See* Prev. Order at 18. This reference to a third amended complaint was in error.

Plaintiff then filed his Second Amended Complaint. ECF No. 35. Plaintiff declined to pursue his previously pleaded claims against the Board and now names only nineteen individual defendants, grouped as follows:

- Eleven Board Members: Dev GnanaDev, M.D., Denise Pines, Michael Bishop, M.D., Randy W. Hawkins, M.D., Howard R. Krauss, M.D., Sharon Levine, M.D., Ronald H. Lewis, M.D., Gerrie Schipske, R.N.P., J.D., Jamie Wright, Barbara Yaroslavsky,[3] and Felix C. Yip, M.D. (collectively, "Board defendants");

- Board Executive Director Kimberly Kirchmeyer;

- Board investigator Cathy L. Lozano (retired);

- Board physician consultant Peter Tom, M.D.;

- Board expert witness Khosrow Afsari, M.D., and Smita Chandra, M.D.; and

- Board employees Paulette Romero and Cyndie Kouza.

*See* SAC ¶¶ 7–25.

Plaintiff now asserts fourteen claims against defendants. He brings his first through fourth and eighth claims under §§ 1981, 1983 and 1985, alleging racial discrimination, retaliation, wrongful use of administrative proceedings, deliberate indifference, civil conspiracy and violations of the United States and California constitutional rights to freedom of speech, petition, due process and equal protection. *Id.* ¶¶ 101–62, 191–200. Plaintiff's fifth through

---

[3] On July 23, 2019, during the pendency of this motion, defendants filed a Suggestion of Death in compliance with Federal Rule of Civil Procedure 25(a), notifying all parties of the death of defendant Barbara Yaroslavsky. ECF No. 48. Plaintiff has not yet responded. Under Rule 25(a), the action shall be dismissed as to the deceased party if a motion to substitute is not made within ninety days after the death is suggested on the record. The Rule "requires two affirmative steps in order to trigger the running of the 90 day period." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). "First, a party must formally suggest the death of the party upon the record. Second, the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *Id.* (internal citations omitted). It is unclear to the court to what extent defendants have complied with this procedure, and thus whether the ninety-day period has been triggered. However, Yaroslavsky's death does not automatically terminate the court's jurisdiction. *See id.* at 233–35. If no substitution is made in the requisite time period under Rule 25, the court will dismiss the remaining claims against Yaroslavsky. In the interim, the court resolves the instant motion to dismiss against all named defendants pending resolution of this issue.

seventh and ninth through twelfth claims allege various state law violations. *Id.* ¶¶ 163–90, 201–39. Claims thirteen and fourteen allege Sherman Act and Clayton Act violations. *Id.* ¶¶ 240–66.

Defendants now collectively move to dismiss portions of the Second Amended Complaint. ECF No. 41.

II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (internal quotations omitted) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Twombly*, 550 U.S. at 555–56). This rule does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), or material attached to or

4

incorporated by reference into the complaint, *see id.* A court's consideration of documents

attached to a complaint, documents incorporated by reference in the complaint, or matters of

judicial notice will not convert a motion to dismiss into a motion for summary judgment.[4] *United*

*States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus., Inc. v. Symington*,

51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

980 (9th Cir. 2002) (even though court may look beyond pleadings on motion to dismiss,

generally court is limited to face of the complaint on 12(b)(6) motion).

III.   DISCUSSION

          Defendants make nine arguments for dismissal of plaintiff's claims in part or in

whole against various defendants based on the applicable statute of limitations, federal and state

immunities, plaintiff's failure to state a claim for relief or the pleading of claims already

dismissed in the court's previous order. Mot., ECF No. 41, at 1–2.[5] The court addresses each of

these arguments below.

A.   California Government Claims Act Presentation

          Defendants move to dismiss the state law claims pleaded in plaintiff's intentional

and negligent interference, unfair competition, Unruh Act, intentional infliction of emotional

distress and fraud claims, arguing these causes of action arise from claims and legal theories not

fairly reflected in plaintiff's July 14, 2016 Government Claim Form. *Id.* at 28. Plaintiff asserts

the court already considered this matter in its previous order and determined his claim form

sufficiently reflected all of plaintiff's claims except those pertaining to the Board's 2013 decision

---

[4] Defendants request the court judicially notice seventeen documents, all of which are matters of public record and are incorporated by reference in plaintiff's complaint. Defs.' RJN Exs. A–Q, ECF Nos. 42-1, 42-2. The court GRANTS the unopposed request as to each document cited in this order. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (incorporation by reference doctrine permits court to "consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them" (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)).

[5] Citations to the parties' briefs refer to the ECF page numbers, not the briefs' internal pagination. Citations to defendants' exhibits, however, refer to the exhibit numbering assigned by defendants.

and defendants' related activity preceding that decision.  *See* Opp'n, ECF No. 43, at 7–8.  In reply, defendants argue the court's previous order "does not discuss or rule on whether Plaintiff's state law causes of action arising from his factual allegations in the period *after* the 2013 Decision, particularly after December 4, 2014, are fairly reflected in his Government Claim Form in compliance with California law."  Reply, ECF No. 45, at 4–5 (emphasis in original).  Therefore, according to defendants, the court did not determine whether these causes of action are fairly reflected in plaintiff's claim form.  *See id.*

Before filing a state law action against a public entity or its employees, the California Government Claims Act requires a plaintiff to timely present an administrative claim for damages to the relevant public entity in accordance with California Government Code section 910.  Cal. Gov't Code § 945.4; *see also State v. Superior Court*, 32 Cal. 4th 1234, 1240 (2004) ("[T]he filing of a claim for damages . . . is a condition precedent to plaintiff's maintaining an action against [a public entity] defendant . . . .") (internal quotations omitted) (quoting *Williams v. Horvath*, 16 Cal. 3d 834, 842 (1976)).  Under section 910, a claim form must include "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim."  Cal. Gov't Code § 910(c)–(d).

Because "[t]he purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation,'" a claim form need not specify every act or omission that allegedly caused the injury.  *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004) (quoting *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974), *superseded by statute on other grounds*, Cal. Gov't Code § 905.1).  If a plaintiff ultimately files a complaint against the public entity, however, "the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim."  *Id.* at 447 (citing *Nelson v. State*, 139 Cal. App. 3d 72, 79 (1982)).  In addition, "[i]f a plaintiff relies on more than one theory of recovery against the state, each cause of action must have been reflected in a timely claim."  *Nelson*, 139 Cal. App. 3d at 79.  Courts have generally barred complaints when there is a

"complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim." *Stockett*, 34 Cal. 4th at 447 (internal quotations omitted) (quoting *Blair v. Superior Court*, 218 Cal. App. 3d 221, 226 (1990)). Nonetheless, "[a] complaint's fuller exposition of the factual basis beyond that given in the claim [form] is not fatal, so long as the complaint is not based on an 'entirely different set of facts.'" *Id.* (quoting *Stevenson v. S.F. Housing Auth.*, 24 Cal. App. 4th 269, 278 (1994)); *see also id.* ("Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint." (citing *White v. Superior Court*, 225 Cal. App. 3d 1505, 1510–11 (1990))).

## 1. The Court's Prior Order

In its previous order, the court summarized the information in plaintiff's claim form, Defs.' Ex. P ("Claim Form"), ECF No. 42-1, as follows:

> In his July 14, 2016 claim form, Bonner identifies the "date of the incident" giving rise to his claim as December 4, 2014 through January 18, 2016." *See* Claim Form at 2. He explains he seeks $25 million for "Loss of income, investment opportunity, loss of employment, business opportunity, marital relationship." *Id.* He also states his claim is against the "Medical Board of California," without listing any individual defendant." *Id.*; *see* Cal. Gov't Code § 910(e) (requiring claimant to include "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known"). When prompted to "[e]xplain the circumstances that led to the damage or injury," Bonner writes only "Wrongful Revocation of Medical License # A30477." Claim Form at 3. When asked "why [he] believe[s] the state is responsible for the damage or injury," Bonner wrote, "The California Medical Board, [sic] wrongfully revoked my medical license." *Id.* Bonner also attached to the claim form the state court's February 27, 2015 minute order staying the Board's revocation of Bonner's license and briefly describing his probation requirements and petition for penalty relief. *Id.* at 5–6.

Prev. Order, ECF No. 34, at 14–15 (alterations in original) (footnote omitted).

Based on the above, the court concluded: "Because [plaintiff's] claim form notified the government of acts arising only from 'December 4, 2014[, the date plaintiff alleges his license was revoked following the Board's refusal to consider his petition for penalty relief,] through January 18, 2016,' his state law claims seeking damages and arising from the Board's

2013 Decision are barred here." *Id.* at 15. The court explained the Board's "2013 Decision and acts leading up to that decision are based on an 'entirely different set of facts' than those [plaintiff] provided in his claim form." *Id.* The court also noted "the form was untimely as to the Board's 2013 Decision because [plaintiff] filed his claim form on July 13, 2016, well outside the one-year limitations period." *Id.* at 16. Therefore, the court granted defendants' motion to dismiss plaintiff's state law claims for damages without leave to amend "insofar as those claims pertain to the 2013 Decision and defendants' related activity preceding that decision." *Id.*

The court's previous order thus did not analyze or determine whether plaintiff's claim form fairly reflects state law causes of action arising from his factual allegations arising during the period after the Board's 2013 decision, as pleaded in the Second Amended Complaint.

### 2. Plaintiff's Claim Form

As summarized in the court's previous order, plaintiff's July 14, 2016 claim form provides sparse details about the circumstances of plaintiff's claim. Plaintiff identifies the "date of the incident" giving rise to his claim as "December 4, 2014 through January 18, 2016." Claim Form at 2. He then explains he seeks $25 million for "[l]oss of income, investment opportunity, loss of employment, business opportunity, marital relationship." *Id.* He also states his claim is against the "Medical Board of California" but does not list any individual defendant. *Id.* When prompted to "[e]xplain the circumstances that led to the damage or injury," plaintiff states only "Wrongful Revocation of Medical License, # A30477." *Id.* at 3. To explain "why [he] believe[s] the state is responsible for the damage or injury," plaintiff wrote, "The California Medical Board, [sic] wrongfully revoked my medical license." *Id.* Plaintiff also attached to the claim form the state court's February 27, 2015 minute order staying the Board's revocation of plaintiff's license and briefly describing his probation requirements and petition for penalty relief. *Id.* at 5–6.[6]

---

[6] Plaintiff does not expressly state he attached this minute order to his claim form, but he filed the claim form and the minute order in this court as a single document. *See* ECF No. 42-2. Further, plaintiff checked a box on the claim form indicating he had "[a]ttach[ed] copies of any documentation that supports [his] claim." *Id.* at 2. The court assumes for purposes of the present motion that the minute order was attached to plaintiff's claim form.

The general and vague allegations in plaintiff's claim form do not fairly reflect the theories of recovery pleaded in plaintiff's state law causes of action in the Second Amended Complaint. While plaintiff's claim form makes the bare allegation the Board wrongfully revoked his medical license and caused plaintiff loss of income, as well as employment, business and investment opportunity, the claim form does not allege any specific wrongful interfering or unfair conduct by defendants that would put the Board on notice of plaintiff's intentional or negligent interference or unfair competition claims. Further, neither the claim form nor the attached minute order mentions any acts by defendants of racial discrimination or fraud, or any intentional or reckless conduct designed to inflict emotional distress, as alleged in plaintiff's tenth, eleventh and twelfth causes of action. Plaintiff's claim form also makes no mention of any emotional distress and seeks no damages for emotional harm as alleged in plaintiff's eleventh cause of action. Therefore, nothing in the claim form alerted the Board or defendants of the theories of recovery plaintiff now pursues in this action. *See Derby v. City of Pittsburg*, No. 16-CV-05469-SI, 2017 WL 713322, at *9–10 (N.D. Cal. Feb. 23, 2017) (dismissing plaintiff's fraud and negligent misrepresentation claims without leave to amend because neither claim form nor attached documents "mention or discuss the allegedly fraudulent or negligent misrepresentations that plaintiff alleges"); *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 377 (2014) (holding substantial compliance exception could not save plaintiff's claim when her claim forms included "no reference whatsoever" to defendant's allegedly tortious acts and did not indicate damages sought for those acts).

Moreover, rather than elaborating on the facts in his claim form, plaintiff attempts in the Second Amended Complaint to support his claims by injecting facts made of whole cloth. Neither the claim form nor the attached minute order provide a single substantive reference to the fundamental facts underlying the challenged causes of action in the Second Amended Complaint, namely, the Board's allegedly fraudulent investigations and accusations against plaintiff, its refusal to allow plaintiff to review his central file, the allegedly unlawful process leading to the revocation of plaintiff's medical license, the Board's publication of the revocation in the National Practitioner Data Bank and on the Internet, its failure or refusal to consider plaintiff's petition for

9

penalty relief and its defiance of a court order to reinstate that petition and notify Medi-Cal of the wrongful revocation of plaintiff's license.  *See* SAC ¶¶ 45, 50, 57–58, 62–66, 69–70, 73–76, 164, 173, 205, 212, 218, 226, 232–37.  Plaintiff's claim form thus offered the Board no information upon which to investigate plaintiff's claims.  *Cf. Stockett*, 34 Cal. 4th at 448–49 (holding plaintiff's claim form fairly reflected his wrongful termination claim against public agency because form stated date and place of his termination, identified individual officers he believed responsible, factual circumstances of his termination and asserted agency violated California public policy by terminating him for supporting an employee's sexual harassment complaints against agency's insurance broker).

### 3. Conclusion

Plaintiff's 2016 claim form does not fairly reflect each theory of recovery or the facts underlying the state law causes of action in his Second Amended Complaint.  Accordingly, the court GRANTS defendants' motion to dismiss plaintiffs state law claims for failure to comply with California Government Code section 945.4.

## B. Claims Against Board Defendants

Defendants further argue the court should dismiss plaintiff's federal claims against the Board defendants because they are entitled to absolute immunity under federal law.  Mot. at 21.  Defendants assert the Board defendants are immune from liability for plaintiff's state law claims under California law, regardless of whether those claims are fairly reflected in plaintiff's claim form.  *Id.* at 24.  Plaintiff argues immunity under federal and state law does not apply to the Board defendants' actions.  Opp'n at 4–6.

### 1. Federal Absolute Immunity

The Board defendants argue they are absolutely immune from liability for plaintiff's federal claims.  Mot. at 21.  "Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities."  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 364 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)).  Federal absolute immunity may also extend to state officials not traditionally regarded as judges or prosecutors if the officials perform judicial,

prosecutorial, quasi-judicial or quasi-prosecutorial functions. *Butz v. Economou*, 438 U.S. 478,

513–17 (1978); *Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999). Courts employ a functional

approach to determine whether an official is entitled to absolute immunity, assessing "whether the

actions taken by the official are 'functionally comparable' to that of a judge or a prosecutor."

*Olsen*, 363 F.3d at 923 (citing *Butz*, 438 U.S. at 513). In making this determination, the court

examines the "nature of the function performed, not the identity of the actor who performed it."

*Mishler*, 191 F.3d at 1002 (internal quotations omitted) (quoting *Buckley v. Fitzsimmons*,

509 U.S. 259, 269 (1993)).

The Supreme Court has identified six nonexclusive factors "as characteristic of the

judicial process" for courts to consider in determining whether to grant absolute immunity:

> (a) the need to assure that the individual can perform his functions
> without harassment or intimidation; (b) the presence of safeguards
> that reduce the need for private damages actions as a means of
> controlling unconstitutional conduct; (c) insulation from political
> influence; (d) the importance of precedent; (e) the adversary nature
> of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*, 438 U.S. at 512). If the court

determines these *Butz* factors warrant the application of absolute immunity, the court then

analyzes whether the specific actions at issue "are judicial or closely associated with the judicial

process." *Mishler*, 191 F.3d at 1007 (citing *Buckley*, 509 U.S. at 273). Only acts closely

associated with the judicial process, not administrative or ministerial acts, are entitled to absolute

immunity. *Id.* at 1008–09 (acts occurring during disciplinary hearing process entitled to

immunity, but administrative act of corresponding with another state medical board was not);

*Olsen*, 363 F.3d at 928 ("procedural steps involved in the eventual decision denying [plaintiff] her

license reinstatement" were entitled to immunity, but issuance of a billing statement was not).

a. Application of Absolute Immunity to California Medical Board

The first part of the absolute immunity analysis requires the court to determine

whether the California Medical Board and its members function in a sufficiently judicial or

prosecutorial capacity to warrant the application of absolute immunity. *See Olsen*, 363 F.3d

at 924. Twice the Ninth Circuit has held state medical boards and their members "are

11

functionally comparable to judges and prosecutors" and thus "are entitled to absolute immunity for their quasi-judicial acts." *Mishler*, 191 F.3d at 1007 (Nevada); *Olsen*, 363 F.3d at 925–26 (Idaho). Additionally, several district courts have concluded the *Butz* factors weigh in favor of applying absolute immunity to the California Medical Board's quasi-judicial and quasi-prosecutorial acts. *Mir v. Kirchmeyer*, No. 12-CV-2340-GPC-DHB, 2016 WL 2745338, at \*12 (S.D. Cal. May 11, 2016), *aff'd sub nom.*, *Mir v. Levine*, 745 F. App'x 726 (9th Cir. 2018), *cert. denied*, No. 18-1403, 2019 WL 2028065 (U.S. June 24, 2019); *Mir v. Deck*, No. SACV 12-1629-RGK (SH), 2013 WL 4857673, at \*14 (C.D. Cal. Sept. 11, 2013), *aff'd*, 676 F. App'x 707 (9th Cir. 2017); *Chung v. Johnston*, No. C 09-02615 MHP, 2009 WL 3400658, at \*4 (N.D. Cal. Oct. 20, 2009), *aff'd*, 441 F. App'x 536 (9th Cir. 2011); *Sprague v. Med. Bd. of Cal.*, No. 07-CV-1561-JLS (LSP), 2009 WL 10698417, at \*5 (S.D. Cal. Mar. 30, 2009), *aff'd*, 402 F. App'x 275 (9th Cir. 2010); *Yoonessi v. Albany Med. Ctr.*, 352 F. Supp. 2d 1096, 1100–02 (C.D. Cal. 2005). The court agrees with the analysis of these district court decisions regarding the California Medical Board's quasi-judicial and quasi-prosecutorial actions and finds no need to repeat the analysis here. As relevant here, "the Medical Board functions in a sufficiently judicial and prosecutorial capacity to entitle members and officers to absolute immunity." *Kirchmeyer*, 2016 WL 2745338, at \*13.

b.   <u>Scope of Immunity</u>

Finding absolute immunity applies to the Board's actions does not end the inquiry. *See Mishler*, 191 F.3d at 1007. The court must next determine which, if any, of the Board's alleged acts "are not sufficiently connected to their judicial functions to warrant the shield of absolute immunity." *Olsen*, 363 F.3d at 926. "[T]he protections of absolute immunity reach only those actions that are judicial or closely associated with the judicial process." *Mishler*, 191 F.3d at 1007. In *Mishler*, the Ninth Circuit found acts committed during a disciplinary hearing process, including "investigating charges, initiating charges, weighing evidence, making factual determinations, determining sanctions, and issuing written decisions," fall within the scope of absolute immunity. *Id.* at 1004, 1008. In *Olsen*, the Ninth Circuit elaborated on its explanation in

*Mishler*, adding that acts "intimately connected" to Board members' adjudicatory role in licensing physicians are likewise entitled to absolute immunity. *Olsen*, 363 F.3d at 928.

In contrast, ministerial acts enjoy no such protection. *Mishler*, 191 F.3d at 1008. For example, in *Mishler*, the Ninth Circuit refused to apply absolute immunity to a Nevada Medical Board member's failure to respond to inquiries from another state medical board. *Id.* The *Mishler* court explained that such an act, or failure to act, was not closely associated with the judicial process but rather constituted "an administrative function entailing examination of records and sending of correspondence." *Id.* Following the same reasoning, the *Olsen* court refused to apply absolute immunity to acts pertaining to the Idaho Medical Board's billing practices. *Olsen*, 363 F.3d at 929. The court must determine, therefore, whether absolute immunity reaches the acts complained of in plaintiff's Second Amended Complaint.

Here, plaintiff's allegations against the Board defendants involve actions closely related to the defendants' quasi-judicial or quasi-prosecutorial functions. Plaintiff's claims against the Board defendants in the Second Amended Complaint stem from two principal alleged acts: (1) the filing of a petition to revoke plaintiff's probation and to revoke plaintiff's medical license, and (2) the refusal to consider plaintiff's petition for penalty relief under California Business & Professions Code section 2307. *See* SAC ¶¶ 58, 62–63, 65–70, 73–75, 80, 90, 100, 107, 121, 126, 132, 149, 154, 192, 242, 252, 259, 262. These principal alleged acts, "unlike responding to general inquiries or maintaining billing procedures, cannot be classified as ministerial or administrative in nature." *Yoonessi*, 352 F. Supp. 2d at 1103 (finding plaintiff's allegations that Board members committed "fraudulent acts in connection with revoking Plaintiff's [medical] license" were prosecutorial in nature); *see also, e.g.*, *Kirchmeyer*, 2016 WL 2745338, at *14 (finding plaintiff's allegations that Board members were "currently enforcing" an "illegal" decision placing plaintiff on probation and revoked plaintiff's medical license for not completing the "illegal probation" involved actions closely related to their roles in the quasi-judicial or quasi-prosecutorial process); *Read v. Haley*, No. 3:12-CV-02021-MO, 2013 WL 1562938, at *9 (D. Or. Apr. 10, 2013) (finding all members of Oregon Medical Board entitled to absolute immunity on "claims arising out of the members' participation in the Board's

13

disciplinary efforts"), *aff'd*, 650 F. App'x 492 (9th Cir. 2016); *Manzur v. Montoya*, No. 2:07-CV-00603-JCM-GWF, 2008 WL 1836957, at *5 (D. Nev. Apr. 24, 2008) (finding plaintiff's allegations that members of Nevada Medical Board "illegally revoked his medical license" and continue to "take" his medical license involved only actions closely related to their roles in a quasi–judicial or quasi-prosecutorial process), *aff'd*, 337 F. App'x 692 (9th Cir. 2009).

Plaintiff nonetheless argues he has alleged "multiple ministerial acts" by the Board defendants falling outside the scope of absolute immunity. Opp'n at 5. These claimed ministerial acts include: (1) relying upon false investigative reports as the basis to revoke plaintiff's probation and revoke his medical license, (2) refusing to enforce the Medical Practice Act ("MPA") as it relates to the consideration of plaintiff's petition for penalty relief, (3) withdrawing plaintiff's petition for penalty relief, (4) failing to notify Medi-Cal about the wrongful revocation of plaintiff's license and refusing to request Medi-Cal to reinstate his provider status, and (5) defying the superior court orders requiring the Board defendants to reinstate plaintiff's petition for penalty relief and notify Medi-Cal. *Id.* at 5–6. Plaintiff also claims the Board defendants filed false investigative reports against him used as the basis for formal accusations, *id.* at 5, but the Second Amended Complaint alleges only defendants Afsari, Chandra, Tom and Lozano prepared these false reports, *see* SAC ¶¶ 35–37, 45, 57–58. The court does not consider these allegations regarding the preparation of false reports, contained in the immediately preceding citation, in determining whether the Board defendants are entitled to absolute immunity.

Plaintiff's allegations that the Board defendants relied on false investigative reports, refused to consider plaintiff's petition for penalty relief, withdrew that petition and refused to follow the superior court's orders all relate to the Board defendants' ultimate decision to revoke plaintiff's medical license and not consider his petition for penalty relief. *See, e.g.*, *Olsen*, 363 F.3d at 928 (holding "Board's decision not to hold a further hearing," and "denial of [plaintiff's] motion for reconsideration were each procedural steps involved in the eventual decision denying [plaintiff] her license reinstatement"); *Kirchmeyer*, 2016 WL 2745338, at *3, *14 (finding Board members' alleged enforcement of "illegal" decision placing plaintiff on

probation despite superior court order staying enforcement of, and later vacating certain conditions of, that probation was closely related to their roles in the quasi-judicial or quasi-prosecutorial process and entitled to absolute immunity); *Yoonessi*, 352 F. Supp. 2d at 1103 (Board members' alleged reliance upon fraudulent statements about plaintiff in connection with revoking plaintiff's medical license directly related to revocation decision, thus falling within scope of absolute immunity). Here, the acts or failures to act that plaintiff alleges "are inextricably intertwined with [the Board defendants'] statutorily assigned adjudicative functions and are entitled to the protections of absolute immunity." *Olsen*, 363 F.3d at 928.

Further, the Board defendants' alleged failure to notify Medi-Cal of the status of plaintiff's license or to request Medi-Cal reinstate plaintiff's provider status also falls within the scope of absolute immunity. Plaintiff alleges the Board defendants failed to take these actions in defiance of the superior court orders regarding plaintiff's petition for writ of administrative mandate and application to stay the Board's decision revoking his medical license. *See* SAC ¶¶ 73–74. Thus, the Board defendants' failure to notify Medi-Cal or request reinstatement of plaintiff's license also were procedural steps closely related to the Board's quasi-judicial disciplinary and licensing actions against plaintiff and are protected by absolute immunity.

The alleged acts by the Board defendants thus fall within the scope of protection offered by absolute immunity. Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's §§ 1981, 1983 and 1985 and antitrust claims against the Board defendants.

2.      State Immunity

Defendants also assert the Board defendants are immune from liability in the face of plaintiff's state law claims arising from the revocation of plaintiff's medical license and related acts. *See* Mot. at 24. While the court has already concluded plaintiff's state law claims are not fairly reflected in his Government Claim Form, it finds the Board defendants are also entitled to state law immunity for their alleged acts.

Under California Government Code section 821.2, public employees are not "liable for an injury caused by [their] issuance, denial, suspension or revocation of, or by [their] failure or refusal to issue, deny, suspend or revoke" a license when they have statutorily

authorized discretion to issue, deny, suspend or revoke a license. While this immunity applies only to discretionary, as opposed to ministerial, acts, *see Morris v. County of Marin*, 18 Cal. 3d 901, 911–15 (1977), *disapproved of on other grounds in Caldwell v. Montoya*, 10 Cal. 4th 972, 987 n.8 (1995), it covers not only ultimate licensing decisions but also the "integral parts of the process" leading to those decisions, *Engel v. McCloskey*, 92 Cal. App, 3d 870, 881 (1979).

Here, the Board defendants qualify for the immunity afforded by section 821.2. The Board is a public entity: a licensing, regulatory and disciplinary board within the Department of Consumer Affairs, an agency of the State of California. *See* Cal. Gov't Code § 811.2; Cal. Bus. & Prof. Code §§ 100, 101(b), 2001, 2001.1. By serving as members and officers of the Board, the Board defendants qualify as public employees. Cal. Gov't Code §§ 810.2, 811.4 (public employee "includes an officer, . . . employee, or servant [of the public entity], whether or not compensated"). The Board has statutory authority to suspend, revoke or otherwise limit a medical license. *See* Cal. Bus. & Prof. Code §§ 2004, 2220 *et seq*. Therefore, the Board defendants are immune from liability arising from their revocation of plaintiff's medical license or their decision not to consider his petition for penalty relief.

Plaintiff nonetheless asserts licensing immunity does not apply to ministerial acts by the Board defendants alleged in the Second Amended Complaint. Opp'n at 5. To support this assertion, plaintiff relies on the same five purported ministerial acts he cites to oppose the application of federal absolute immunity. *Id.* at 5–6. As explained above, the acts to which plaintiff points relate closely to the Board defendants' roles in a quasi-judicial or quasi-prosecutorial process.

Given that, for purposes of section 821.2 immunity, these acts are integral steps in the Board defendants' decisions to revoke plaintiff's medical license and not consider his petition for penalty relief, the court GRANTS defendants' motion to dismiss plaintiff's state law claims against the Board defendants.

C.    Claims Against Defendants Dr. Afsari, Dr. Chandra, Dr. Tom and Romero

Defendants also argue the applicable statutes of limitations bar plaintiff's §§ 1981 and 1985 and state law claims against defendants Afsari, Chandra and Tom, as well as plaintiff's

16

§ 1985 claim against defendant Romero. Mot. at 16, 18. Specifically, defendants contend the court already dismissed plaintiff's §§ 1981, 1983 and 1985 claims and state law claims without leave to amend in its previous order, insofar as those claims arose from the Board's 2013 decision and actions leading up to that decision, as barred by the applicable statutes of limitations. *Id.* at 16. Defendants also assert plaintiff has now alleged only two facts relating to these defendants that do no not arise from the 2013 decision or related actions, and neither of these alleged acts occurred after the 2013 decision; therefore, plaintiff has not timely alleged these causes of action against Afsari, Chandra, Tom and Romero. *Id.* at 17–18. Plaintiff argues these claims are timely. Opp'n at 2.

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citing *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566 (3d Cir. 1979)). The limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (internal quotations omitted) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). Generally, "a statute of limitations period is triggered by the decision constituting the discriminatory act and not by the consequences of that act." *McCoy v. San Francisco*, 14 F.3d 28, 30 (9th Cir. 1994) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58 (1980)). But that decision must be sufficiently "final" to trigger the statute of limitations. *Id.* (citing *Norco Const., Inc. v. King County*, 801 F.2d 1143, 1145–46 (9th Cir. 1986)).

### 1. Federal Claims

In its previous order, the court found plaintiff's "§§ 1981, 1983 and 1985 claims arising from the Board's 2013 decision and actions preceding the 2013 Decision are untimely." Prev. Order at 12. Because §§ 1981, 1983 and 1985 do not contain a statute of limitations, the court applied California's two-year statute of limitations for personal injury actions to plaintiff's federal claims. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (when no federal limitations period exists, "federal courts 'apply the forum state's statute

17

of limitations for personal injury actions'" and the forum state's tolling provisions, except when the forum state's law is inconsistent with federal law (quoting *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007)); *see also* Cal. Code Civ. Proc. § 335.1 (providing two-year statute of limitations for personal injury actions).  The court found plaintiff's federal claims "accrued when the Board adopted its March 19, 2013 Decision," and plaintiff filed his suit after the statutory period had run.  Prev. Order at 11–13.

Plaintiff, however, now argues his federal claims against defendants Afsari, Chandra, Tom and Romero are timely because: (1) these defendants subjected him to a "hostile work environment" by engaging in a policy, pattern and practice of discrimination against him, and at least one discriminatory act occurred within the statutory time limits; (2) the complained-of acts by Afsari, Chandra, Tom and Romero "continue to harm" plaintiff, and his claims against them fall within the scope of the continuing violations doctrine; and (3) a "series of actions" tolled the applicable statute of limitations on these claims.  Opp'n at 2–4.

The court disagrees.  Regarding plaintiff's hostile work environment argument, because plaintiff has not alleged he was an "employee" of the Board within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, he may not maintain a suit under the theory of hostile work environment.  *See id.* § 2000e-2; *see also Solesbee v. County of Inyo*, No. 1:13-CV-1548 AWI JLT, 2014 WL 3890680, at *8 (E.D. Cal. Aug. 7, 2014) (plaintiff could not maintain hostile work environment suit when she "was not an 'employee' within the meaning of [Title VII]").

Plaintiff's continuing violations argument similarly lacks merit.  The continuing violations doctrine allows a plaintiff to bring suit based in part on events otherwise be time-barred, so long as the plaintiff can show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period."  *Green v. L.A. Cty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989) (alteration in original) (internal quotations omitted) (quoting *Valentino v. U.S. Postal Serv.*, 674 F.2d 56, 65 (D.C. Cir. 1982)).  The alleged discriminatory acts must be "related closely enough to constitute a continuing violation."  *Id.* at 1480–81 (internal quotations omitted)

1  (quoting *Bruno v. W. Elec. Co.*, 829 F.2d 957, 961 (10th Cir. 1987), *overruled on other grounds*

2  *by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), *superseded in part on other*

3  *grounds by statute*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5

4  (2009)).  The Supreme Court, however, has held "discrete discriminatory acts are not actionable if

5  time barred, even when they are related to acts alleged in timely filed charges."  *Morgan*,

6  536 U.S. at 113.  In its previous order, this court held plaintiff could not state §§ 1981 or 1985

7  claims arising from the Board's 2013 decision under the continuing violations doctrine because

8  "the Board's 2013 decision and later alleged mishandling of [plaintiff's] petition for penalty relief

9  are analytically 'discrete' wrongs that separately accrued and are separately actionable."  Prev.

10  Order at 13.  Here, the only tortious acts by Afsari, Chandra, Tom and Romero that plaintiff

11  alleges in his Second Amended Complaint relate to the Board's 2013 decision, not plaintiff's

12  petition for penalty relief.  *See* SAC ¶¶ 35–36, 45, 50, 57–58.  Therefore, the continuing

13  violations doctrine does not apply to plaintiff's claims against these defendants.

14          Finally, plaintiff's equitable tolling argument cannot save his federal claims.

15  "Under California law, equitable tolling 'reliev[es] plaintiff from the bar of a limitations statute

16  when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to

17  lessen the extent of his injuries or damage.'"  *Butler*, 766 F.3d at 1204 (alteration in original)

18  (quoting *Addison v. State*, 21 Cal. 3d 313, 317 (1978)).  Thus, in an appropriate case, a plaintiff

19  might toll the statute of limitations for the time spent pursuing a remedy in another forum before

20  filing the claim in federal court.  Equitable tolling requires: (1) defendants' "timely notice" of the

21  original claim, (2) "lack of prejudice to defendants in gathering evidence" to defend against the

22  later claim, and (3) plaintiff's "good faith and reasonable conduct" in filing the later claim.

23  *Guevara v. Ventura Cty. Cmty. Coll. Dist.*, 169 Cal. App. 4th 167, 173 (2008) (quoting *Downs v.*

24  *Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1100 (1997)).

25          Plaintiff argues three acts tolled the statute of limitations with respect to his federal

26  claims against Afsari, Chandra, Tom and Romero: (1) the filing of his petition for a writ of

27  administrative mandamus on May 17, 2013, which plaintiff asserts tolled the statute of limitations

28  at least until the California Supreme Court denied his petition on July 23, 2014; (2) the filing of

another petition for a writ of administrative mandamus on January 5, 2015, which plaintiff asserts tolled the statute of limitations until the court's ruling on September 25, 2015; and (3) the filing of his Government Claim Form against the Board on July 13, 2016, which plaintiff asserts tolled the statute of limitations until October 2016 when plaintiff received notice of the rejection of his claim. Opp'n at 3–4. The court previously stated, without deciding, that plaintiff's 2013 mandamus petition equitably tolled his federal claims at most until July 23, 2014, and did not save them from the statute of limitations bar. Prev. Order at 13. Although plaintiff now asserts two additional acts tolled the statute of limitations, both his 2015 petition and claim form relate to the Board's alleged failure or refusal to consider plaintiff's 2014 petition for penalty relief, not the Board's 2013 decision. *See* Defs.' Ex. H ("2015 Mandamus Petition"), ECF No. 42-1; Claim Form. As explained above, plaintiff's §§ 1981 and 1985 claims against Afsari, Chandra, Tom and Romero stem only from the 2013 decision. Therefore, the filing of plaintiff's later, unrelated petition and claim form do not toll the statute of limitations for plaintiff's federal claims against these defendants.

The statute of limitations thus began to accrue on plaintiff's §§ 1981 and 1985 claims against Afsari, Chandra, Tom and Romero on March 19, 2013, when the Board adopted its decision. Prev. Order at 11–12. At most, plaintiff's filing of a petition for administrative mandamus on May 17, 2013, equitably tolled these claims until July 23, 2014, when the California Supreme Court denied his petition. Prev. Order at 13. Plaintiff filed this suit on February 27, 2017, more than thirty-one months later and nine months after the two-year statute of limitations had run. *See* ECF No. 1. Plaintiff has not demonstrated viable hostile work environment or continuing violations theories of liability to otherwise support his federal claims.

Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's §§ 1981 and 1985 causes of action as to defendants Afsari, Chandra, Tom and Romero.

### 2. State Claims

The court need not reach the merits of defendants' statute of limitations argument as to plaintiff's state law claims against defendants Afsari, Chandra and Tom because it has already concluded plaintiff's Government Claim Form does not fairly reflect his state law claims.

The court nevertheless notes that several of these claims also appear to be barred by the relevant statutes of limitations. *See* Cal. Code Civ. Proc. § 335.1 (two-year statute of limitations for negligence, intentional infliction of emotional distress); *id.* § 339 (two-year statute of limitations for intentional and negligent interference claims); *id.* § 338 (three-year statute of limitations for fraud and Unruh Act claims); Cal. Bus. & Prof. Code § 17208 (four-year statute of limitations for unfair competition claims).

D.      Claims Against Defendant Lozano

Defendants argue the court should dismiss plaintiff's fourth through eighth causes of action against defendant Lozano, alleging §§ 1981 and 1985 claims for deliberate indifference and civil conspiracy and state law claims for intentional and negligent interference and negligence, as improperly pleaded. Mot. at 16. Defendants contend the court already granted Lozano summary judgment as to these claims in its previous order. *Id.*; *see* Prev. Order at 20–21. In his opposition, plaintiff makes the vague and unsupported assertion that defendants "seek dismissal on improper grounds related to causes of action against Defendant Lozano," Opp'n at 1, but does not otherwise counter or respond to defendants' argument that he improperly alleges these claims.[7]

The court GRANTS defendants' motion to dismiss plaintiff's fourth through eighth causes of action against defendant Lozano without leave to amend. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (citing *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026 (4th Cir. 1994) (finding plaintiff who did not address issues raised in defendant's motion to dismiss "effectively abandoned his claim, and cannot raise it on appeal").

E.      Claims for Damages for Violations of California Constitution

Defendants argue the court should dismiss plaintiff's claims for damages arising from alleged violations of his rights to free speech, petition, due process and equal protection

---

[7] Plaintiff argues he has alleged facts tolling the statutes of limitations on plaintiff's claims against Lozano or otherwise defeats defendants' statute of limitations arguments. Opp'n at 3–4. Defendants, however, do not make any statutes of limitations arguments in their motion to dismiss the claims against Lozano. *See* Reply at 3 n.1.

under Article I of the California Constitution as pleaded in his second claim because plaintiff cannot obtain damages for these alleged violations. Mot. at 25. Plaintiff responds to defendants' argument for dismissal of this portion of his second claim only by making the unsupported and vague assertion that defendants "seek dismissal on improper grounds related to . . . lack of applicability of article 1 of the California Constitution." Opp'n at 1.

California courts have held no private right of action for damages exists under Article I, sections 2(a), 3(a) or 7(a) of the California Constitution, the provisions under which plaintiff brings his claims. *See, e.g.*, *Degrassi v. Cook*, 29 Cal. 4th 333, 335 (2002) (concluding no cause of action for damages available for alleged violation of plaintiff's right to free speech under Article I, section 2(a)); *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 329 (2002) (finding "no basis upon which to recognize a constitutional tort action" for damages to remedy an alleged violation of the plaintiff's right to due process under Article I, section 7(a)); *MHC Fin. Ltd. P'ship Two v. City of Santee*, 182 Cal. App. 4th 1169, 1184 (2010), *as modified on denial of reh'g* (Apr. 9, 2010) ("A plaintiff may not, as a matter of law, recover damages for a violation of [the right to petition for redress of grievances under] article I, section 3(a).").

The court GRANTS defendants' motion to dismiss plaintiff's state constitutional claims for money damages as alleged in plaintiff's second claim.

   F. <u>Claims for Violation of First Amendment Right to Petition</u>

Defendants argue plaintiff has failed to state a claim for violation of his right to petition for redress of grievances under the First Amendment of the U.S. Constitution in the second, third and fourth claims of the Second Amended Complaint. Mot. at 26. Defendants assert plaintiff bases his First Amendment claims on defendants' alleged failure or refusal to consider his petition for penalty relief, and "[w]hile California law may require [defendants] to have considered Plaintiff's Petition, the United States Constitution does not." *Id.* at 27. As with his damages claims under the California Constitution, plaintiff makes no argument refuting defendants' position other than the vague, unsupported assertion that defendants "seek dismissal on improper grounds related to . . . the sufficiency of a claim for violation of the right to petition under the First Amendment of the US [sic] Constitution." Opp'n at 1.

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. As defendants note, however, "the First Amendment does not impose any affirmative obligation on the government" to listen or respond to petitions raised by individual citizens, guarantee that citizens' speech will be heard, or require that every petition for redress of grievances be successful. *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) (per curiam). Plaintiff does not claim he could not petition the Board for relief; rather, he claims defendants violated his right to petition by failing or refusing to consider his petition for penalty relief. *See, e.g.*, SAC ¶¶ 121, 132, 154. Therefore, because the Constitution does not require the government to consider plaintiff's petition and provides no guarantee of the petition's success, the court GRANTS defendants' motion to dismiss plaintiff's claims for violation of his First Amendment right to petition in his second, third and fourth claims.

G.  Claims for Violation of Fourth Amendment

1.  Plaintiff's Effective Concession

Defendants assert plaintiff "has failed to plead any violation of his Fourth Amendment rights under the U.S. Constitution" in his second, third or fourth claims because he has not alleged facts showing an unconstitutional search or seizure. Mot. at 27. Plaintiff admits "Defendant[s] may be correct as to the [F]ourth [A]mendment," but asserts he intended to bring his claims under the Fifth Amendment instead of the Fourth Amendment. Opp'n at 9. Plaintiff further moves for leave to further amend to state Fifth Amendment claims instead of Fourth Amendment claims. *Id.* The court interprets plaintiff's request to amend as a concession of his Fourth Amendment claims. *See Nastic v. County of San Joaquin*, No. 2:11-CV-02521-JAM-GGH, 2012 WL 1980944, at *4 (E.D. Cal. June 1, 2012) (dismissing plaintiffs' § 1983 claim when they did not respond to defendants' arguments in their opposition and instead requested leave to amend). Therefore, the court GRANTS defendants' motion to dismiss plaintiff's Fourth Amendment claims as alleged in his second, third and fourth claims.

1          2.      Leave to Amend

2          Regarding plaintiff's request for leave to amend, Federal Rule of Civil Procedure

3   15(a)(2) states, "[t]he court should freely give leave [to amend pleadings] when justice so

4   requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon*

5   *Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v.*

6   *Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.

7   1981)). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by

8   the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the

9   pleadings or technicalities.'" *Leighton*, 833 F.2d at 186 (quoting *Webb*, 655 F.2d at 979).

10  However, "the liberality in granting leave to amend is subject to several limitations." *Ascon*

11  *Props.*, 866 F.2d at 1160 (citing *Leighton*, 833 F.2d at 186). "Leave need not be granted where

12  the amendment of the complaint would cause the opposing party undue prejudice, is sought in

13  bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* (citing *Leighton*,

14  833 F.2d at 186). In addition, a court should look to whether the plaintiff has previously amended

15  the complaint, as "the district court's discretion is especially broad 'where the court has already

16  given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (alteration in

17  original) (quoting *Leighton*, 833 F.2d at 186 n.3).

18          Here, the court denies plaintiff's request for leave to amend to substitute Fifth

19  Amendment claims for his Fourth Amendment claims. Plaintiff has already pleaded violations of

20  his Fourteenth Amendment due process rights in his second, third and fourth claims. SAC

21  ¶¶ 116–162. Plaintiff's proposed amendment to add Fifth Amendment due process claims would

22  thus be duplicative of his Fourteenth Amendment due process claims. *See Smith v. City of*

23  *Fontana*, 818 F.2d 1411, 1424 (9th Cir. 1987) ("Because the Fifth Amendment claim must rest

24  either on that Amendment's due process clause or its implicit equal protection clause, any Fifth

25  Amendment claim is merely duplicative of the Fourteenth Amendment claims."), *overruled on*

26  *other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). Further, the Fifth

27  Amendment applies to state government defendants, such as defendants in this action, through the

28

Fourteenth Amendment.  *See Ingraham v. Wright*, 430 U.S. 651, 672–73 (1977).  Accordingly, the court denies plaintiff leave to amend to add duplicative Fifth Amendment due process claims.

IV.    CONCLUSION

For the foregoing reasons, the court orders as follows:

1.    The court GRANTS defendants' motion to dismiss plaintiff's state law claims as to all defendants without leave to amend;

2.    The court GRANTS defendants' motion to dismiss all federal claims against the Medical Board defendants without leave to amend;

3.    The court GRANTS defendants' motion to dismiss plaintiff's §§ 1981 and 1985 claims against defendants Afsari, Chandra, Tom and Romero without leave to amend;

4.    The court GRANTS defendants' motion to dismiss all claims against defendant Lozano, other than plaintiff's antitrust claims, without leave to amend;

5.    The court GRANTS defendants' motion to dismiss plaintiff's claims for money damages arising under the California Constitution as alleged against all defendants in plaintiff's second claim without leave to amend;

6.    The court GRANTS defendants' motion to dismiss plaintiff's claims for violation of his First Amendment right to petition as alleged against all defendants in plaintiff's second, third and fourth claims without leave to amend; and

7.    The court GRANTS defendants' motion to dismiss plaintiff's Fourth Amendment claims as alleged against all defendants in his second, third and fourth claims without leave to amend.

IT IS SO ORDERED.

DATED:  August 8, 2019.

_____
UNITED STATES DISTRICT JUDGE