UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Ernest Lincoln Bonner, Jr., M.D.,

                Plaintiff,

    v.

Medical Board of California, et al.,

                Defendants.

No. 2:17-cv-00445-KJM DB

ORDER

      In 2014, the Medical Board of California (Board) revoked plaintiff Ernest L. Bonner's medical license after Bonner did not comply with the terms of his probation.  In doing so, the Board did not consider plaintiff's petition for penalty relief.  Bonner filed a complaint in this court in 2017, alleging the Board and individual defendants violated his First and Fourth Amendment rights, conspired to violate his rights, committed antitrust violations under the Sherman and Clayton Acts, and conspired to commit these violations.  The parties filed cross-motions for summary judgment.  For the following reasons, **the court grants defendants' motion for summary judgment.**

1  I.      **BACKGROUND**

2          The Board first received a complaint about plaintiff's quality of care and billing practices

3  in 2006.  Decl. of Iveta Ovsepyan (Ovsepyan Decl.) at 24[1] (Nov. 3, 2006 Audit and Investigation

4  Letter), ECF No. 105-1.[2]  In 2010, following investigations and reports by Board employees and

5  expert medical consultants, the Department of Health Care Services (DHCS) suspended

6  plaintiff's Medi-Cal provider number for two years.  *Id*. at 174 (Jul. 14, 2010 Letter from DHCS

7  to Plaintiff).  In early 2013, the Board revoked plaintiff's Physician's and Surgeon's Certificate,

8  but stayed the revocation while placing him on probation for three years, subject to certain terms

9  and conditions.  Req. for Judicial Not. (RJN) at 19 (Mar. 19, 2013 Decision and Order of

10 Abatement of the Board), ECF No. 105-4; *id.* at 20–32 (Proposed Decision by Administrative

11 Law Judge (ALJ), Feb. 20, 2013).[3]  In addition to allowing a physician to monitor his practice,

12 the terms and conditions required plaintiff to pay for and complete ethics and medical record-

13 keeping courses and undergo a formal assessment.  *Id.* at 26–32 (Proposed Decision by ALJ,

14 Feb. 20, 2013).  Plaintiff challenged the Board's decision by bringing an action in superior court,

15 which denied him relief, as did the California Court of Appeal and the Supreme Court of

16 California.  *See* RJN at 60–61 (Judgment of the Superior Ct. of Cal. (Mar. 5, 2014)); *id.* at 80

17 (Order of the Ct. of Appeal of the State of Cal., First Appellate District (May 15, 2014); and *id.* at

18 83 (Order of the Supreme Ct. of Cal. (Jul. 23, 2014)).

19         In April 2014, after a year on probation, plaintiff filed a petition for penalty relief,

20 requesting additional time to pay for the required courses.  Ovsepyan Decl. at 215–17 (Apr. 18,

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[2] Most documents cited in this background section are attached to Ovsepyan Decl. for clarity, the court uses parentheticals to describe the document contained in the declaration and cited to in the order.

[3] Defendants request the court take judicial notice of thirteen documents, all of which are judicially noticeable as facts under Federal Rule of Evidence 201(b)(1)–(2) (". . . The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  *See* RJN at 2–3.  The court **grants** defendants' request and uses parentheticals to identify the documents cited and contained in the request for judicial notice.

1    2014 Pet. for Penalty Relief); *see also* Cal. Bus. & Prof. Code § 2307 (allowing for petition to

2    modify penalty).  Two months later, the Board petitioned to revoke plaintiff's probation for his

3    failure to comply with the terms of probation.  Ovsepyan Decl. at 238–243 (Jun. 9, 2014 Pet. to

4    Revoke Probation).  In October of that year, the Board adopted an ALJ's recommendation to

5    revoke probation and plaintiff's license for failure to comply with the probationary terms.  *Id*. at

6    231–37 (Proposed Decision by ALJ, Sep. 10, 2014); *id.* at 230 (Board Decision and Order

7    Adopting ALJ Proposed Decision).  Shortly thereafter, the Board told plaintiff it was withdrawing

8    his petition because it was revoking his medical license.  *Id.* at 224 (Oct. 14, 2014 Letter from

9    Cyndie Kouza to plaintiff Withdrawing Pet. and Revoking Medical License).  The Board never

10   considered plaintiff's petition for penalty relief.  *Id.*

11          In early 2015, plaintiff filed a petition for writ of administrative mandate to stay the

12   revocation of his medical license.  *See* RJN at 44–57 (Verified Pet. Filed in Superior Ct. of Cal.,

13   Cnty. of Sacramento (Jan. 5, 2015)).  The state court issued a temporary stay, finding the Board

14   unlikely to prevail on the merits because although "the Board was not required to grant plaintiff's

15   petition for penalty relief, the court finds nothing in [California Business and Professions Code]

16   section 2307 that allows it to simply ignore an otherwise properly filed petition in this manner."

17   *See* Pl.'s Statement of Undisputed Material Facts (SUMF) Part 2 at 269–70, Ex. 36 (Superior Ct.

18   of Cal., Cnty. of Sacramento Min. Order (Feb. 27. 2015)), ECF No. 113-3.[4]  Accordingly, the

19   Board placed plaintiff back on probation and reinstated his license.  Defs.' Undisp. Mat. Facts

20   (UMF) ¶ 40 (citing Second Am. Compl. (SAC) ¶ 73, ECF No. 35), ECF No. 105-3.[5]  The Board

---

[4] Plaintiff submits two separate filings titled "Plaintiff's Statement of Undisputed Material Facts," together totaling nearly 700 pages.  For clarity, the court refers to ECF No. 113-2 as Pl.'s SUMF Part 1.  This filing also contains plaintiff's statement of facts, *see* Pl.'s SUMF Part 1 at 2–20, along with supporting exhibits 1–12.  As noted above, the court refers to ECF No. 113-3 as Pl.'s SUMF Part 2.  Part 2 contains supporting exhibits 13–43.

[5] Plaintiff filed a "Statement of Disputed Material Facts," *see* ECF No. 122, which the court understands to be his response to the Board's Statement of Undisputed Material Facts.  Plaintiff's response does not comply with this court's Local Rules, which requires him to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  E.D. Cal. L.R. 260(b).  Plaintiff only reproduces some of the Board's undisputed material facts, and he does not always include record cites to

1   also notified the National Practitioner Databank that plaintiff's license was reinstated.  *Id.*  In

2   March 2015, Medi-Cal provided plaintiff with instructions for getting a new Medi-Cal billing

3   number.  Ovsepyan Decl. at 215–17 (Mar. 19, 2015 Letter from DHCS Re: Request for

4   Reinstatement to Participate in the Medi-Cal Program).

5       In September 2015, the state court remanded the case to the Medical Board to consider

6   and rule on plaintiff's petition for penalty relief, which the Board had yet to consider.  Pl.'s

7   SUMF Part 2 at 272–83, Ex. 37 (Superior Ct. of Cal., Cnty. of Sacramento Order on Pet. for Writ

8   of Mandate (Sept. 25, 2015)).  Plaintiff also filed another petition for penalty relief.  *Id.* at 287–

9   89, Ex. 39 (Petition for Penalty Relief (Dec. 23, 2015)).  In early 2016, the state court adopted its

10  September 2015 tentative order as final, and again ordered the Board to afford plaintiff a hearing

11  on his petition.  *Id.* at 297, Ex. 40 (Superior Ct. of Cal., Cnty. of Sacramento Order and J.

12  Partially Granting Pet. for Writ of Administrative Mandate (Jan. 19, 2016)).  In early March

13  2016, the Board contacted plaintiff about his renewed petition for penalty relief.  Pl.'s SUMF Part

14  2 at 312, Ex. 41 (Email from Board to Plaintiff (Mar. 1, 2016)).  Later that month at a hearing

15  before an ALJ on the petition to revoke plaintiff's probation, plaintiff's counsel stated plaintiff

16  had "completed the probation requirements that were at issue at the time the petition was

17  brought," so "the petition is now moot . . . ."  RJN Exs. M–Q at 60 (Tr. of Proceedings before

18  ALJ (Mar. 23, 2016)), ECF No. 42-2.  Plaintiff applied for a new Medi-Cal number in 2020.

19  Ovsepyan Decl. at 15 (Bonner Depo. 153:6–16 (Nov. 16, 2020)).

20      At all relevant times, defendant Kimberly Kirchmeyer was the Executive Director of the

21  Medical Board of California.  Defs.' UMF ¶ 28.  Until she retired in 2017, defendant Cyndie

22  Kouza served as Management Services Technician with the Board, where she was responsible for

23  preparing petitions for relief and collecting probation funds at the direction of the Board.  *Id.* ¶ 50.

24  Defendant Paulette Romero was also a Board employee, serving as Staff Services Manager.  *Id.*

25  ¶ 51.  Her duties included directing and supervising staff within the Board's Central Compliance

26  Unit, which reviews complaints filed against physicians.  *Id.*  Defendant Cathy Lozano was an

---

support his denials.  Accordingly, the court understands plaintiff to be admitting any material
facts he does not reproduce or properly deny.

1   employee and investigator with the Board until December 2011. *Id.* ¶ 52.  Defendant Peter Tom,

2   M.D. served as a District Medical Consultant for the Board.  *Id.* ¶ 55.  Defendants Khosrow

3   Afsari, M.D. and Smita Chandra, M.D. served as medical expert reviewers for the Board at

4   different times between 2008 and 2018.  *Id.* ¶¶ 53–54.

5          Plaintiff filed a complaint in this court in February 2017, alleging multiple violations of

6   federal law.  *See generally* Compl., ECF No. 1.  In September 2018, this court granted in part

7   defendants' first motion to dismiss, giving plaintiff leave to amend some of his claims.  *See*

8   *generally* Prev. Order (Sept. 30, 2018), ECF No. 34.  Plaintiff filed a second amended complaint

9   and defendants again moved to dismiss.  *See generally* SAC; MTD, ECF No. 41.  In August

10  2019, the court again granted defendants' motion in part.  *See* Prev. Order (Aug. 9, 2019), ECF

11  No. 49.  In late 2021, the parties filed cross-motions for summary judgment on plaintiff's

12  remaining claims based on 42 U.S.C. §§ 1981, 1983 and 1985, alleging the remaining defendants[6]

13  violated his constitutional rights under the First and Fourteenth Amendments, conspired to violate

14  his rights, committed antitrust violations under the Sherman and Clayton Acts, and conspired to

15  commit these violations.  *See* Defs.' Mot. for Summ. J. (MSJ), ECF No. 105; Pl.'s MSJ, ECF

16  No. 113.  The matter is full briefed, *see* Pl.'s Opp'n, ECF No. 115[7]; Defs.' Reply, ECF No. 117;

17  Defs.' Opp'n, ECF No. 114; and Pl.'s Reply at 121[8].  The court held a motion hearing by

18  videoconference on March 4, 2021.  Gary Sherrer appeared for plaintiff, who was also present,

19  and Iveta Ovsepyan appeared for defendants.  *See* Min. Order, ECF No. 129.  The court took the

20  matter under submission.

---

[6] Remaining defendants are Kimberly Kirchmeyer, Cathy Lozano, Paulette Romero, Cyndie Kouza, Peter Tom, M.D., Khosrow Afsari, M.D., and Smita Chandra, M.D.

[7] This document is mislabeled on the docket as "Opposition to 113 Motion for Summary Judgment," rather than "Opposition to 105 Motion for Summary Judgment."

[8] Plaintiff titled this brief "Plaintiff's Reply to Defendant's Opposition to Defendant's Summary Judgment Motion" and the docket labels it as "Reply by Ernest L. Bonner, Jr in Opposition to 105 Motion for Summary Judgment."  The court construes the filing as Bonner's reply in support of his motion for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The nonmoving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).  The court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The same standard applies to motions for partial summary judgment. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").  Cross-motions for summary judgment are evaluated separately under the same standard, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## III.   ANALYSIS

### A.   Absolute Judicial or Quasi-Judicial Immunity

Defendants first argue they are entitled to absolute judicial immunity. *See* Defs.' MSJ at 16.  The Board successfully advanced this argument with respect to a different subset of defendants in its December 2018 motion to dismiss.  MTD at 2, 10; Prev. Order (Aug. 9, 2019) at

6

10–15.[9]  The Board did not make this argument as to any of the defendants presently before the court.  *See generally* MTD.[10]  The Board now argues all remaining defendants are entitled to absolute judicial immunity, and the court's earlier reasoning and conclusion applies with equal force to them.  Defs.' MSJ at 16–17.

For ease of reference, the court restates the legal standard for federal absolute immunity and reviews the relevant case law.  "Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities."  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 364 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)).  Federal absolute immunity may also extend to state officials not traditionally regarded as judges or prosecutors if the officials perform judicial, prosecutorial, quasi-judicial or quasi-prosecutorial functions.  *Butz v. Economou*, 438 U.S. 478, 513–17 (1978); *Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999).  Courts employ a functional approach to determine whether an official is entitled to absolute immunity, assessing "whether the actions taken by the official are 'functionally comparable' to that of a judge or a prosecutor."  *Olsen*, 363 F.3d at 923 (citing *Butz*, 438 U.S. at 513).  In making this determination, the court examines the "nature of the function performed, not the identity of the actor who performed it."  *Mishler*, 191 F.3d at 1002 (internal quotations omitted) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).

The Supreme Court has identified six nonexclusive factors "as characteristic of the judicial process" for courts to consider in determining whether to grant absolute immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political

---

[9] The subset of defendants included Dev GnanaDev., M.D., Denise Pines, Michael Bishop, M.D., Randy W. Hawkins, M.D., Howard R. Krauss, M.D., Sharon Levine, M.D., Ronald H. Lewis, M.D., Gerrie Schipske, R.N.P., J.D., Jamie Wright, Barbara Yaroslavsky, and Felix C. Yip, M.D., and the Board referred to them collectively as the "Medical Board Defendants).  MTD at 2.

[10] While it appears these defendants could have advanced this defense earlier in the case, they did not and so the court addresses it here for the first time.

influence; (d) the importance of precedent; (e) the adversary nature
of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*, 438 U.S. at 512).  If the court

determines these *Butz* factors warrant the application of absolute immunity, the court then

analyzes whether the specific actions at issue "are judicial or closely associated with the judicial

process." *Mishler*, 191 F.3d at 1007 (citing *Buckley*, 509 U.S. at 273).  Only acts closely

associated with the judicial process, not administrative or ministerial acts, are entitled to absolute

immunity.  *Id.* at 1008–09 (acts occurring during disciplinary hearing process entitled to

immunity, but administrative act of corresponding with another state medical board was not);

*Olsen*, 363 F.3d at 928 ("procedural steps involved in the eventual decision denying [plaintiff] her

license reinstatement" were entitled to immunity, but issuance of a billing statement was not).

### 1.      Application of Absolute Immunity to Defendants

The first part of the absolute immunity analysis requires the court to determine whether

the remaining seven defendants, who served as the Board's Executive Director, Board support

staff, an expert consultant, or medical expert reviewers, functioned in a sufficiently judicial or

prosecutorial capacity to warrant the application of absolute immunity.  *See Olsen*, 363 F.3d

at 924.  The court finds that at all relevant times, they did.  "The Ninth Circuit has repeatedly held

that certain quasi-prosecutorial and quasi-judicial functions of the members of independent state

medical boards are entitled to absolute immunity because they are 'functionally comparable to

judges.'" *Peterson v. Sutter Med. Found.*, No. 21-04908, 2022 WL 316677, at *8 (N.D. Cal.

Feb. 2, 2022) (citing *Buckwalter v. Nevada Bd. of Med. Examiners*, 678 F.3d 737, 740 (9th Cir.

2012), *as amended* (June 8, 2012); *Mishler*, 191 F.3d at 1007 (Nevada)).  The Circuit also has

held the same is true of the functions of Board professional staff and counsel.  *Olsen*, 363 F.3d at

925–26.

Additionally, several district courts have concluded the *Butz* factors weigh in favor of

applying absolute immunity to the California Medical Board's quasi-judicial and quasi-

prosecutorial acts.  *Mir v. Kirchmeyer*, No. 12- 2340, 2016 WL 2745338, at *12 (S.D. Cal.

May 11, 2016), *aff'd sub nom.*, *Mir v. Levine*, 745 F. App'x 726 (9th Cir. 2018), *cert. denied*,

1    No. 18-1403, 2019 WL 2028065 (U.S. June 24, 2019); *Mir v. Deck*, No. 12-1629, 2013 WL

2    4857673, at *14 (C.D. Cal. Sept. 11, 2013), *aff'd*, 676 F. App'x 707 (9th Cir. 2017); *Chung v.*

3    *Johnston*, No. 09-02615, 2009 WL 3400658, at *4 (N.D. Cal. Oct. 20, 2009), *aff'd*, 441 F. App'x

4    536 (9th Cir. 2011); *Sprague v. Med. Bd. of Cal.*, No. 07-1561, 2009 WL 10698417, at *5 (S.D.

5    Cal. Mar. 30, 2009), *aff'd*, 402 F. App'x 275 (9th Cir. 2010); *Yoonessi v. Albany Med. Ctr.*,

6    352 F. Supp. 2d 1096, 1100–02 (C.D. Cal. 2005).  The court continues to agree with the analysis

7    of these district court decisions regarding the California Medical Board's quasi-judicial and

8    quasi-prosecutorial actions and finds no need to repeat the analysis here.  Prev. Order (Aug. 8,

9    2019) at 12.  As relevant here, "a medical board, and its members, professional staff and counsel,

10   function in a sufficiently judicial and prosecutorial capacity to entitle them to absolute

11   immunity."  *Chung*, 2009 WL 3400658, at *4.

12                    **2.    Scope of Immunity**

13        Finding absolute immunity applies to the defendants' functions does not end the inquiry.

14   *See Mishler*, 191 F.3d at 1007.  In deciding whether summary judgment for defendants is

15   appropriate, the court must next determine whether there is any dispute of fact regarding whether

16   their challenged actions were "not sufficiently connected to their judicial functions to warrant the

17   shield of absolute immunity."  *Olsen*, 363 F.3d at 926.  "[T]he protections of absolute immunity

18   reach only those actions that are judicial or closely associated with the judicial process."  *Mishler*,

19   191 F.3d at 1007.  In *Mishler*, the Ninth Circuit found acts committed during a disciplinary

20   hearing process, including "investigating charges, initiating charges, weighing evidence, making

21   factual determinations, determining sanctions, and issuing written decisions," fall within the

22   scope of absolute immunity.  *Id.* at 1004, 1008.  In *Olsen*, the Ninth Circuit elaborated on its

23   explanation in *Mishler*, adding that acts "intimately connected" to Board members' adjudicatory

24   role in licensing physicians are likewise entitled to absolute immunity.  *Olsen*, 363 F.3d at 928.

25        In contrast, ministerial acts enjoy no such protection.  *Mishler*, 191 F.3d at 1008.  For

26   example, in *Mishler*, the Ninth Circuit refused to apply absolute immunity to a Nevada Medical

27   Board member's failure to respond to inquiries from another state medical board.  *Id.*  The

28   *Mishler* court explained that such an act, or failure to act, was not closely associated with the

1    judicial process but rather constituted "an administrative function entailing examination of

2    records and sending of correspondence." *Id.* Following the same reasoning, the *Olsen* court

3    refused to apply absolute immunity to acts pertaining to the Idaho Medical Board's billing

4    practices. *Olsen*, 363 F.3d at 929. Here, the court must determine whether, when viewing the

5    facts in the light most favorable to plaintiff, there exists a dispute of material fact regarding

6    whether absolute immunity reaches defendants' actions.

7         The court begins by reviewing plaintiff's allegations and the undisputed facts as to each

8    defendant's actions. Plaintiff alleges defendants Lozano and Tom interviewed him as part of an

9    investigation opened by the Board in 2006, and that their report contained "many fabrications and

10   misrepresentations." SAC ¶ 35. Allegedly, the Board then sent this report to defendant Asfari,

11   who included "the same" and "new" fabrications and misrepresentations in his own report. *Id.*

12   ¶ 36. Likewise, plaintiff alleges defendant Chandra submitted false information and

13   misrepresentations about plaintiff in at least one report to the Board. *Id.* ¶ 57.

14        At all relevant times, defendant Lozano was an employee and investigator with the Board,

15   while defendant Tom served as District Medical Consultant for the Board. Defs.' UMF ¶¶ 52, 55.

16   Defendants Asfari and Chandra served as medical expert reviewers for the Board. *Id.* ¶¶ 53–54.

17   All were tasked with investigating charges against plaintiff, and any reports, conclusions, or

18   recommendations regarding plaintiff were the result of those investigations. *Id.* ¶¶ 52, 53, 55; *see*

19   *also* Pl.'s SUMF Part 1 at 20–338, Exs. 1–12. Thus, even assuming plaintiff's allegations are

20   true, defendants' investigatory acts "cannot be classified as ministerial or administrative in

21   nature." *Yoonessi*, 352 F. Supp. 2d at 1103 (finding plaintiff's allegations that Board members

22   committed "fraudulent acts in connection with revoking Plaintiff's [medical] license" were

23   prosecutorial in nature); *see also, e.g.*, *Kirchmeyer*, 2016 WL 2745338, at *14 (finding plaintiff's

24   allegations Board members were "currently enforcing" an "illegal" decision placing plaintiff on

25   probation and revoked plaintiff's medical license for not completing "illegal probation" involved

26   actions closely related to their roles in quasi-judicial or quasi-prosecutorial process); *Manzur v.*

27   *Montoya*, No. 2:07-CV-00603-JCM-GWF, 2008 WL 1836957, at *5 (D. Nev. Apr. 24, 2008)

28   (finding plaintiff's allegations members of Nevada Medical Board "illegally revoked his medical

1   license" and continue to "take" his medical license involved only actions closely related to their

2   roles in quasi–judicial or quasi-prosecutorial process), *aff'd*, 337 F. App'x 692 (9th Cir. 2009);

3   *Peterson*, 2022 WL 316677, at *8 ("even if it were discriminatory," behavior "involved in the

4   [Medical Board's] disciplinary process" "appears to be shielded by absolute immunity")

5        Turning to defendant Romero, plaintiff alleges she refused his request to inspect his

6   central file.  SAC ¶¶ 50–51.  At the time, Romero served as the Staff Services Manager for the

7   Board.  Defs.' UMF ¶ 51.  In that role, she was tasked with supervising and directing staff in the

8   Board's Central Complaint Unit, which is where complaints against physicians are filed.  Defs.'

9   UMF ¶ 52.  Thus, even assuming plaintiff's allegation is true, the claim against her arises out of

10  her "participation in the Board's disciplinary efforts," which are sufficiently judicial to entitle her

11  to absolute immunity.  *See Read v. Haley*, No. 12-02021, 2013 WL 1562938, at *9 (D. Or.

12  Apr. 10, 2013) (finding all members of Oregon Medical Board entitled to absolute immunity on

13  "claims arising out of the members' participation in the Board's disciplinary efforts"), *aff'd*,

14  650 F. App'x 492 (9th Cir. 2016).

15       Finally, the court turns to the allegations against defendant Kirchmeyer, who at all

16  relevant times served as the Board's Executive Director, and defendant Kouza, who served as

17  Management Services Technician with the Board, where she was responsible for preparing

18  petitions for relief and collecting probation funds at the direction of the Board.  Defs.' UMF

19  ¶¶ 28, 50.  Plaintiff's allegations against these two defendants largely mirror the allegations

20  against the subset of defendants this court previously found shielded by judicial immunity.  *See*

21  Prev. Order (Aug. 9, 2019) at 13.  Specifically, plaintiff challenges (1) the filing of a petition to

22  revoke plaintiff's probation and to revoke plaintiff's medical license, and (2) the refusal to

23  consider plaintiff's petition for penalty relief under California Business & Professions Code

24  section 2307.  *See* SAC ¶¶ 58, 62–63, 65–70, 73–75, 80, 90, 100, 107, 121, 126, 132, 149, 154,

25  192, 242, 252, 259, 262.  As the court noted in its previous order, these acts are not ministerial or

26  administrative in nature.  Prev. Order (Aug. 9, 2019) at 13 (citing cases).

27       Furthermore, this court previously found even the allegedly "ministerial acts" plaintiff

28  alleges "are inextricably intertwined with [the Board defendants'] statutorily assigned

1     adjudicative functions and are entitled to the protections of absolute immunity." *Olsen*, 363 F.3d

2     at 928; *see* Prev. Order (Aug. 9, 2019) at 14 (observing "claimed ministerial acts include:

3     (1) relying upon false investigative reports as the basis to revoke plaintiff's probation and revoke

4     his medical license, (2) refusing to enforce the Medical Practice Act ('MPA') as it relates to the

5     consideration of plaintiff's petition for penalty relief, (3) withdrawing plaintiff's petition for

6     penalty relief, (4) failing to notify Medi-Cal about the wrongful revocation of plaintiff's license

7     and refusing to request Medi-Cal to reinstate his provider status, and (5) defying the superior

8     court orders requiring the Board defendants to reinstate plaintiff's petition for penalty relief and

9     notify Medi-Cal.").  This immunity applies "however erroneous the act may have been, and

10    however injurious in its consequences it may have proved to the plaintiff . . . ." *Cleavinger*,

11    474 U.S. at 199–200.

12         Finally, defendant Kirchmeyer's alleged failure to notify Medi-Cal of the status of

13    plaintiff's license or to request Medi-Cal reinstate plaintiff's provider status also falls within the

14    scope of absolute immunity.  Plaintiff alleges Kichmeyer failed to take these actions in defiance

15    of the superior court orders regarding plaintiff's petition for writ of administrative mandate and

16    application to stay the Board's decision revoking his medical license.  *See* SAC ¶¶ 73–74.  Thus,

17    her alleged failure to notify Medi-Cal or request reinstatement of plaintiff's license also were

18    procedural steps closely related to the Board's quasi-judicial disciplinary and licensing actions

19    against plaintiff and are protected by absolute immunity.

20         The alleged acts by all remaining defendants thus fall within the scope of protection

21    offered by absolute immunity.  Accordingly, the court grants defendants' motion for summary

22    judgment on all claims.

23 **IV.   CONCLUSION**

24         For the foregoing reasons, **the court grants defendant's motion for summary judgment**

25    **on all claims.**  Because the court grants defendant's motion for summary judgment on all claims,

26    it need not consider defendants' Ex Parte Application for an order excluding Ralph Peterson,

27    Ernest L. Bonner, Jr., and Victor J. Republicano as expert witnesses, *see* ECF No. 109, and the

1    court finds the request moot.  Plaintiff's motion for extension of time to respond to the Ex Parte

2    Application, *see* ECF No. 109, is likewise moot.

3         This order resolves ECF Nos. 105, 109, 110 and 113.

4         IT IS SO ORDERED.

5    DATED:  January 27, 2023.

6

_____
CHIEF UNITED STATES DISTRICT JUDGE