UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ernest Lincoln Bonner Jr., M.D., | No. 2:17-cv-00445-KJM-SCR |
| Plaintiff, | ORDER |
| v. | |
| Medical Board of California, et al., | |
| Defendants. | |

Ernest Bonner brought this suit against the Medical Board of California (the Board) and other individual defendants[1] in this court in 2017 alleging the Board violated his federal rights by revoking his medical license without first hearing his petition for penalty relief. The Board eventually moved for summary judgment on all claims, and this court granted the motion on judicial immunity grounds. The Ninth Circuit upheld the judgment on all but Bonner's two claims alleging antitrust violations. In supplemental briefing on Bonner's antitrust claims, the Board renews its motion for summary judgment by arguing Bonner has not cited evidence to support either antitrust claim, among other arguments. For the following reasons, the court agrees and **grants** the Board's motion.

---

[1] There are seven individual defendants: Kimberly Kirchmeyer, Cathy Lozano, Paulette Romero, Cyndie Kouza, Peter Tom, M.D., Khosrow Afsari, M.D., and Smita Chandra, M.D. *See* Joint Status Rep. at 2, ECF No. 143.

## I. BACKGROUND

The court incorporates by reference from its previous order the background of this case, which the Ninth Circuit left undisturbed. *See* Order (Jan. 30, 2023) at 2–5, ECF No. 130. The Board had investigated Bonner's medical practices for several years beginning in 2006. Ovsepyan Decl. at 24, ECF No. 105-1. As a result of these investigations, in 2010, the Department of Health Care Services suspended Bonner's Medi-Cal provider number for two years. *Id.* at 174. In 2013, the Board revoked Bonner's Physician's and Surgeon's Certificate, but stayed the revocation while placing Bonner on probation for three years. Req. for Jud. Notice (RJN) at 19–32, ECF No. 105-4. One condition of the probation was for Bonner to complete and pay for medical record-keeping courses and to undergo a formal assessment. *Id.* at 26–32. Bonner challenged this decision unsuccessfully in state court. *Id.* at 80–83.

In April 2014, Bonner filed a petition for penalty relief and requested time to pay for the required courses. Ovsepyan Decl. at 215–19. In June 2014, the Board petitioned to revoke Bonner's probation because he had failed to comply with its terms. *Id.* at 238–43. In October 2014, the Board adopted an ALJ's recommendation to revoke Bonner's license for failing to comply with the probation terms. *Id.* at 231–37. The Board revoked Bonner's license without giving him a hearing on his petition for penalty relief. *Id.* at 224. Bonner filed a writ of administrative mandate to stay the revocation of his medical license. *See* RJN at 44–57. The state court issued a temporary stay. Pl.'s Stmt. Undisp. Mat. Facts (SUMF) Part 2 at 269–70, ECF No. 113-3. The Board placed Bonner back on probation and reinstated his license. Defs.' Undisp. Mat. Facts (UMF) ¶ 40, ECF No. 105-3. In March 2015, Medi-Cal provided Bonner with instructions for getting a new Medi-Cal billing number. Ovsepyan Decl. at 344–45.

In early 2016, the state court made its temporary ruling permanent and ordered the Board to hold a hearing on Bonner's petition for penalty relief. Pl.'s SUMF Part 2 at 297. At a hearing before an ALJ, Bonner's counsel stated Bonner had "completed the probation requirements that were at issue at the time the petition was brought," so "the petition is now moot . . . ." RJN Exs. M–Q at 60, ECF No. 42-2. Bonner applied for a new Medi-Cal number in 2020. Ovsepyan Decl. at 15.

## II. PROCEDURAL BACKGROUND

Bonner, who is black, filed a second amended complaint in 2018, alleging the Board violated a variety of federal laws, including Sections One and Two of the Sherman Act and Section Four of the Clayton Antitrust Act on the theory that the Board conspired to unlawfully suspend his medical license to restrain competition in the market resulting in the "diminution in competition and access to competent and experienced Minority Medical Professionals in the State of California." *See* Second Am. Compl. (SAC) at 47–48, ECF No. 35. This court granted defendants' motion for summary judgment on all claims on the grounds of judicial immunity. *See* Order (Jan. 30, 2023), ECF No. 130. Bonner appealed. *See* ECF No. 133. The Ninth Circuit affirmed this court's grant of summary judgment on Bonner's civil rights claims. *See* USCA Order/Mandate/Memorandum, ECF No. 139. It reversed and remanded Bonner's antitrust claims as the Board did not argue for judicial immunity on those claims. *See id.*

At a scheduling conference held on September 26, 2024, the court ordered the parties to submit supplemental briefing on Bonner's antitrust claims. Scheduling Conference (Sept. 26, 2024), ECF No. 144. The matter is now fully briefed. *See* Defs.' Supp. Antitrust Br., ECF No. 149; Pl.'s Supp. Antitrust Br., ECF No. 151, Reply, ECF No. 152.

On December 11, 2024, this court heard oral argument on Bonner's motion. *See* Mins. Mot. Hr'g, ECF No. 159. Gary Sherrer appeared on behalf of Bonner. *Id.* Gary Ostrick appeared on behalf of defendants. *Id.*

## III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Lerner Rowe PC v. Brown & Shelby LLC*, 119 F.4th 711, 717 (9th Cir. 2024). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor.

3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## IV.   ANALYSIS

The Board seeks summary judgment on Bonner's claims that it violated Section One and Section Two of the Sherman Act.[2]  The court addresses each in turn.[3]

### A.   Section One of the Sherman Act

Section One of the Sherman Act prohibits "contract[s], combination[s] in the form of trust[s] or otherwise, or conspiracy, in restraint of trade or commerce among the several States. . ." 15 U.S.C. § 1.  The Supreme Court has "long recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  "A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output." *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018) (internal marks and citations omitted).  Restraints outside of this small number of per se violations are "judged under the rule of reason." *Id.*  Here, Bonner alleges the Board's restraint on trade violated the rule of reason. *See* Pl.'s Supp. Antitrust Br. at 5, ECF No. 151.  To evaluate whether a restraint on trade violates the rule of reason, a plaintiff must show (1) the existence of a conspiracy, (2) the intention on the part of the co-conspirators to harm or restrain competition, (3) actual injury to competition, and (4) that the plaintiff suffered an "antitrust injury" because of the conspiracy. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012).

Courts use "a three-step, burden-shifting framework" to decide "whether a restraint violates the rule of reason." *Ohio*, 585 U.S. at 541.  Under that framework, Bonner must make an

---

[2] Bonner also alleges a violation of Section 4 of the Clayton Act. *See* SAC at 45, 47.  But Section 4 of the Clayton Act only creates a private action for individuals to sue for violations under the Sherman Act and does not need to be analyzed independently from the analysis of sections one and two of the Sherman Act.  The court therefore only needs to analyze Bonner's claims under the Sherman Act.

[3] Bonner in his supplemental briefing also discusses the Federal Trade Commission (FTC) Act. *See* Pl.'s Supp. Antitrust Br. at 5, ECF No. 151.  But as Bonner acknowledges, private actors cannot bring claims under the FTC Act.  Only the FTC can bring antitrust claims under the FTC Act. *Id.*; *see* 15 U.S.C. § 45(a)(2).  The court therefore does not need to adjudicate this claim.

initial showing "that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Id.* This initial showing can be made through direct evidence that proves "detrimental effects on competition." *Id.* at 542. Or it can be made through indirect evidence such as "reduced output, increased prices, or decreased quality in the relevant market." *Id.* If Bonner could show a substantial anticompetitive effect, the burden would then shift back to the Board to show it had a "procompetitive rationale for the restraint." *Id.* "If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* at 542.

      Assuming without deciding there was some kind of agreement to restrain trade, Bonner has not cited evidence that could prove the Board's restraint of trade has had a substantial anticompetitive effect on the market. In the first place, he has not defined a market. *See* Maiuro Decl. at 35–36, ECF No. 105-2. He claims the Board members are market participants, but the court is left to guess as to the market's contours. *See* Pl.'s Supp. Antitrust Br. at 6. His pleadings do not clarify whether he believes the relevant market is the medical treatment market in California generally, the treatment of patients at residential care facilities (RCFs), or the Medi-Cal market—three vastly different possibilities. *See* SAC ¶ 245. Other parts of his pleadings suggest, but do not clarify, whether he would contend at trial that only the market for black medical professionals is at issue. *Id.* ¶ 246. At oral argument, Bonner claims the geographic scope of the market is California.

      Nor has Bonner cited evidence to show anticompetitive effects on such a potentially expansive market. Bonner claims the Board acts to "control and to eliminate competition when the Medical Board, including its employees, deems such conduct necessary." Pl.'s Supp. Antitrust Br. at 6. Further, he argues the Board conspired to deprive him of his license and prevented him from "marketing his patented medication for others." *Id.* at 7. Bare assertions like these are not enough at the summary judgment stage. As the Ninth Circuit has held, "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Lerner Rowe PC*, 119 F.4th at 717.

For its part, the Board has cited unrebutted evidence its conduct towards Bonner produced no substantial anticompetitive effect. The Board submitted a thorough report with its motion for summary judgment by Lisa Simonson Maiuro, who holds a PhD in Health Policy. *See* Maiuro Decl. In Maiuro's opinion, while the Board's actions may have impacted Bonner personally, they could not have had a substantial anticompetitive effect on the market because the elimination of a single competitor cannot "prove the anticompetitive effect necessary for [a violation of] the Sherman Act." *Id.* at 19. Maiuro submits that in the relevant period, Bonner never had more than 4 percent of the market share of RCF clients in San Francisco. *Id.* at 38. In her opinion, agencies enforcing antitrust laws would not begin an action unless they felt as though an actor was restraining 30 percent of the market share. *Id.* Because Bonner actually claims a much larger market—the entirety of California—his market share has to be even smaller than what Maiuro suggests in her report.

The court grants the Board's motion for summary judgment on Bonner's claim that it violated Section One of the Sherman Antitrust Act.

**B.     Section Two of the Sherman Act**

Section Two of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . ." 15 U.S.C. § 2. To establish a conspiracy to monopolize claim under Section 2, plaintiffs must show: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *In Re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1159 (9th Cir. 2019) (quoting *Paladin Assocs., Inv. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003)). To establish a monopolization claim, a plaintiff must prove "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Id.* (citations omitted).

Bonner has similar problems with his Section Two claim as with his Section One claim. He cannot prove an antitrust injury because he has not properly defined a market. Further, because he has not defined a market, he cannot show the Board attempted to monopolize a market

or the actualization of a monopoly by the Board in any market. He cannot do so because his evidence pertains only to his own disciplinary proceedings. *See* Pl.'s SUMF Parts 1 and 2. As noted, the unrebutted evidence from the defense shows that, at most, Bonner could claim a share of four percent of the relevant RCF San Francisco market. Maiuro Decl. at 38. At oral argument, Bonner claimed the market is the entire state of California, so his market share is far less than 4 percent, as noted above. Controlling 4 percent of a market or less is not enough to show a monopoly. *See id.* The Ninth Circuit has noted that "generally, 65% market share is sufficient to establish that a defendant has monopoly power." *Dreamstime.com LLC v. Google LLC*, 54 F.4th 1130, 1137 n.5 (9th Cir. 2022) (citing *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) (noting courts "generally require a 65% market share to establish a prima facie case of market power")). The Board, further, has provided substantive and unrebutted evidence that there has been no meaningful anticompetitive effect in any of the markets Bonner might be suggesting are relevant. *See generally* Maiuro Decl. And even if Bonner had shown the Board has the possession of monopoly power, or that it desires to possess it, Bonner cannot show there has been an antitrust injury on this record.

The court grants all defendants' summary judgment on Bonner's Section Two claims. Thus, the court grants all defendants summary judgment on Bonner's remaining antitrust claims. Four of the defendants, Kirchmeyer, Kouza, Lozano, and Romero also have pled immunity in response to both of Bonner's antitrust claims under the "Parker" theory of anti-trust immunity. *See* Defs.' Supp. Antitrust Br. at 15–21 (discussing purported application of *Parker v. Brown*, 317 U.S. 341 (1943)). But because the court grants the Board summary judgment on the merits of both of Bonner's antitrust claims, it need not reach the immunity issue.

### V. CONCLUSION

The Board's motion for summary judgment is **granted** on Bonner's remaining antitrust claims. This order resolves ECF No. 113 and **closes the case**.

**IT IS SO ORDERED.**

DATED: April 11, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE

7